No. 81-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

LASZIO TORMA,

Plaintiff and Appellant,

and

SANDRA LEE TORMA,

Defendant, Respondent and Cross-Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Moore, Rice, O'Connell & Refling, Bozeman, Montana

For Respondent:

Landoe, Brown, Planalp, Kommers and Lineberger,
Bozeman, Montana

---

Submitted on Briefs: February 1, 1982

Decided: May 6, 1982

Filed: MAY 6 1982

Thomas J. Kearney
_____
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This appeal results from the Eighteenth Judicial District Court's interpretation and enforcement of a 1971 divorce decree.

Pursuant to a 1971 dissolution decree, respondent Sandra Torma was given custody of their minor children, Christopher and Cynthia, then ages 10 and 7, respectively, and appellant Laszlo Torma was "ordered to pay for the support of the two minor children in the sum of $125.00 per month. . ." Additionally, Sandra was given the right to remain in possession of their jointly-owned house, located at 1208 South Bozeman Avenue, Bozeman, Montana, "until such time as it is otherwise mutually agreed between the parties or until further order of this Court. . ."

Eight and one-half years later, in January of 1979, Christopher, five months short of age eighteen, joined the Navy, thus leaving respondent's immediate custody and care. Laszlo presently concluded that his support obligation as to Christopher was terminated, his underlying assumption being that the decree provided for a severable sixty-two dollar and fifty cent obligation per dependent child per month. The clerk of court's records indicate that as of that month Laszlo reduced his child support payment by one-half.

Sandra disagreed with Laszlo's interpretation of the decree. She instituted a contempt proceeding in March of 1981 seeking child support arrearages due to Laszlo's unilateral reduction in payments; she also sought modification of the decree, requesting an increase in child support to $200.00 per month.

After hearing the District Court concluded that Laszlo was not entitled to an automatic reduction in child support upon Christopher Torma's emancipation. Accordingly, appellant was ordered to pay respondent $1,625.00, a sum representing the balance of the monthly obligation owing from January, 1979 to the date of hearing. Additionally, the court found that Cynthia, a high school senior, was "an excellent student, ambitious and hopeful of continuing to a college degree" and that "she [would] need a place in which to live and increased financial needs to finish college." Judge Lessley concluded that appellant's obligation to provide $125.00 per month for Cynthia's support continued at least until she reached 18 and until she became 22 years old if she attended college. A corollary conclusion reached by the court was that the parties could not sell the Bozeman residence until Cynthia turned 22; the net proceeds from the prospective sale were then to be divided equally between the parties. Attorney's fees were to be paid by the respective parties.

Both parties appeal from the lower court's order. Laszlo contends the district court erred in ordering him to pay the child support arrearages, continuing his child support obligation until Cynthia reached 22 if she attends college, and postponing sale of the parties' house until Cynthia is 22 years old. Sandra raises as error the District Court's failure to order Laszlo to pay interest on the support arrearages and Sandra's attorney's fees, the denial of her motion to increase child support, and the equal division of the net proceeds of the future sale of the parties' residence.

## Child Support: Obligations for Adult Children, Arrearages, Interest, and Denial of Modification.

Appellant contends that he is not legally obligated to

pay child support for his adult children. Appellant's understanding of Montana law is correct: unless the parties agree in writing or the dissolution decree expressly provides for termination of child support at a specified age or time, a parent is not obligated to support an 18 year old or otherwise emancipated child. Chrestenson v. Chrestenson (1979), 180 Mont. 96, 589 P.2d 148. Finding no agreement here nor any express provision in the divorce decree, Chrestenson controls. Accordingly, appellant was not obligated to support Christopher after he entered the Navy and appellant will not be obligated to support Cynthia once she turns 18. To the extent the lower court concluded otherwise, either directly by ordering appellant to pay a monthly sum or indirectly by prohibiting the sale of the parties' residence until Cynthia turns 22, we find error and reverse in part.

That is not to say appellant should prevail on his contention that he not be required to pay support arrearages accruing as of January, 1979.

Whether appellant who has been ordered by divorce decree to pay an undivided sum monthly for the support of two minor children may unilaterally reduce by one-half the amount of such payments when the older child is emancipated or reaches majority is a question of first impression for this Court; not so for the courts of sister states.

Appellant refers this Court to Ditman v. Ditman (1956), 48 Wash.2d 373, 293 P.2d 759, as persuasive authority. There, the Washington Supreme Court upheld a trial court's construction of a similar support provision as providing a severable award for three children, thus permitting the noncustodial parent to automatically pro rate and reduce support payments when a child's dependency has "ceased by

reason of death, emancipation by marriage, attainment of majority, [or] service in the Armed Forces of the United States. . ." Ditman, 293 P.2d at 760. By respondent, this Court is urged to follow Taylor v. Taylor (1961), 147 Colo. 140, 362 P.2d 1027, 1029, wherein the Colorado court states:

> "When a divorce decree directs the father to pay a specified amount periodically for the joint benefit of more than one minor child, the emancipation of one of such children does not automatically affect the liability of the father for the full sum prescribed by the order. Rather it becomes the burden of the father, if he so desires, to make such showing as would entitle him to be relieved of all or a part of such obligation."

Review of the case law reveals that Taylor represents the rule adopted in the vast majority of jurisdictions, see Becker v. Becker (1978 Md.), 387 A.2d 317, and cases cited therein, and for good reason:

> "'The reason for considering a single amount to be paid periodically for the support of more than one child as not subject to an automatic pro rata reduction is two-fold. First, a child support order is not based solely on the needs of the minor children but takes into account what the parent can afford to pay (citations omitted). Consequently, a child support order may not accurately reflect what the children actually require but only what the parent can reasonably be expected to pay. To allow an automatic reduction of an undivided order would be to ignore the realities of such a situation. Second, to regard an undivided child support order as equally divisible among the children is to ignore the fact that the requirements of the individual children may vary widely, depending on the circumstances. Cooper v. Matheny, [(1960), 220 Or. 390, 349 P.2d 812, 813].' Delevett v. Delevett, [(1968), 156 Conn. 1, 238 A.2d 402, 404]." Becker, 387 A.2d at 320.

We approve the rationale set forth in Becker and adopt the rule of Taylor. The District Court committed no error in interpreting its decree to require continuation of the entire monthly support payment until the youngest child

attains majority. Appellant is responsible for the arrearages as calculated.

As to the question of error regarding the lower court's failure to order interest on the child support arrearage, respondent properly relies upon Fitzgerald v. Fitzgerald (1980), ____ Mont. ____, 618 P.2d 867, 37 St.Rep. 1350. There, this Court reiterated that interest is automatically collectible by the judgment creditor spouse on past due support payments, absent contrary provision in a dissolution decree. Williams v. Budke (1980), ____ Mont. ____, 606 P.2d 515, 37 St.Rep. 228. The judgment of the lower court should be appropriately modified.

Finally, the lower court's findings and conclusions of law are inadequate regarding respondent's petition for modification of child support; it is not apparent that the standards of section 40-4-208(2)(b), MCA, were considered or applied. See Bliss v. Bliss (1980), ____ Mont. ____, 609 P.2d 1209, 37 St.Rep. 708. The District Court is directed to make appropriate findings and conclusions upon remand.

Property Division.

This is the first time the District Court has attempted to apportion the parties' marital estate. In 1971, only personal property was divided, and that was accomplished by party agreement. Accordingly, the case law developed under the UMDA constitutes valid precedent for the case at bar. Morse v. Morse (1977), 174 Mont. 541, 571 P.2d 1147.

The only asset subject to distribution is the residence located at 1208 South Bozeman Avenue, Bozeman, Montana. Laszlo Torma argues that, by delaying sale of the parties' residence until after Cynthia turned 22 years of age, the District Court is forcing him to continue child support

beyond majority. As stated above, such a provision cannot be justified unless there is an express agreement or decree provision providing for support of children into their adult lives. Chrestensen, supra. In this case, the four year prohibition on the sale of the house amounts to an abuse of discretion.

As to Sandra's claim that it is inequitable to equally divide the net proceeds upon sale of the house, the following facts are pertinent. The District Court found that the parties purchased the home in February 1966 for $20,700.00 and that Sandra made $750.00 of the $1,000.00 downpayment on the property. From February 1966 until early 1971 the parties resided in the house. Sandra cared for the children and the house. Laszlo worked outside the home, and made occasional improvements to the house. Although the 1971 divorce decree did not specify who was responsible for continued house payments, provision was made to allow Sandra and the children to remain in possession of the house until further court order or agreement of the parties. From June, 1971, until the time of hearing, the District Court found that Sandra made all of the payments on the mortgage, taxes, insurance and assessments on the house, the sum of those payments amounting to over $23,000.00. Further, the court found that the value of the house had appreciated over the years such that at the time of hearing its worth was estimated at $55,000.00. According to stipulation the balance remaining on the mortgage was $10,300.00 as of the date of hearing. The parties also stipulated that for the three years preceding the hearing Laszlo's income ranged from $18,072.00 in 1978 to $22,478.00 in 1980; Sandra's earnings were $2,994.00 in 1978, $4,076.00 in 1979 and $1,993.00 in 1980.

As a general rule the District Court is afforded much discretion in resolving property divisions, and its judgment will not be altered unless a clear abuse of discretion is shown. Zell v. Zell (1977), 174 Mont. 216, 570 P.2d 33. "The criteria for reviewing the district court's discretion is: Did the district court in the exercise of its discretion act arbitrarily without employment of conscientious judgment, or exceed the bounds of reason in view of all the circumstances?" Zell, 174 Mont. at 220, 700 P.2d at 35.

Here, it is not at all evident, contrary to the statement in the memorandum accompanying the lower court's findings of fact and conclusions of law, that "the efforts [of the parties] have been equal in the retaining and maintaining of this only and valuable asset of the marriage." In a situation very similar to this case, this Court recognized that equality and equity are not synonymous when the equity of the noncustodial parent is enhanced solely through the efforts of the custodial parent. Tefft v. Tefft (1981), ____ Mont. ____, 628 P.2d 1094, 38 St.Rep. 837. Not only is it essential to look at the relative contributions of the parties over the years in acquiring and retaining marital assets, it is imperative to assess the relative ability of the parties to acquire property in the future. Smith v. Smith (1981), ____ Mont. ____, 622 P.2d 1022, 38 St.Rep. 146; Tefft, supra. While an equal division of net proceeds may appear to be fair, the practical result of such a division is the party who contributed to maintain and enhance the equity in the house since the divorce receives little benefit from its appreciation. As this Court noted in Lawrence v. Harvey (1980), ____ Mont. ____, 607 P.2d 551, 37 St.Rep. 370, a property division should at least reflect the relative contributions of the

parties, as well as entitle each to a proportionate share of the appreciation in property values in the wake of divorce. The property division below is hereby vacated, and upon remand, the District Court is directed to apply the factors set forth in section 40-4-202, MCA, in accordance with the language of this opinion.

Since we are remanding the trial court may consider the subject of attorney's fees anew.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-9-