No. 81-326

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

GLORIA DAWN PECKENPAUGH,

Petitioner and Respondent,

vs.

KEIL ORLAN PECKENPAUGH,

Respondent and Appellant.

Appeal from:  District Court of the Sixth Judicial District,
In and for the County of Park
Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellant:

Goetz, Madden & Dunn, Bozeman, Montana

For Respondent:

Thomas I. Sabo, Bozeman, Montana

Submitted on briefs:  September 3, 1982

Decided:  December 2, 1982

Filed:  DEC - 2 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The marriage of Keil Orlan Peckenpaugh and Gloria Dawn Peckenpaugh was dissolved in the District Court of the Sixth Judicial District, Park County. The husband (Keil) appeals the award of maintenance to the wife (Gloria).

The parties were married on March 31, 1974. Both had been married before, and Keil by his previous marriage fathered two boys, both having reached majority. Keil is a truckdriver who owns and operates a Peterbilt tractor with a flatbed trailer. Gloria has been a housewife, including caring for Keil's two sons, and has been an occasional truckdriver with her husband.

The total value of all assets of the marriage as valued by the District Court was $78,042.00, as follows:

| | Item | Value |
|---|---|---|
| 1. | Mobile Home - 1978 Windsor 14' x 75' | $21,500.00 |
| 2. | 1977 Honda GL 1000 Motorcycle | 2,700.00 |
| 3. | Peterbilt - 1977 Model 352COE | 29,500.00 |
| 4. | Trailer - 1977 Raven 40' flatbed | 9,500.00 |
| 5. | Pontiac - 1979 Firebird Trans Am | 6,500.00 |
| 6. | Personal property retained in house when wife left | 3,909.00 |
| 7. | Money taken by Gloria Peckenpaugh when she left | 2,200.00 |
| 8. | Personal property taken by Gloria Peckenpaugh when she left | 2,233.00 |
| | TOTAL ASSETS | $78,042.00 |

During the marriage the parties accumulated substantial debts. The court found the liabilities of the marriage totaled $112,073.34, as follows:

-2-

|     | Liability | Amount |
|-----|-----------|--------|
| 1.  | Note, First Security Bank, Livingston, Montana (secured by 1977 Peterbilt) | $ 7,055.89 |
| 2.  | Note, First Security Bank, Livingston, Montana (secured by 1979 Pontiac and 1977 Ravens trailer) | 10,194.05 |
| 3.  | Note, First Security Bank, Livingston, Montana (secured by 1978 Windsor mobile home) | 19,078.36 |
| 4.  | Note, O. F. Peckenpaugh (secured, second lien, 1977 Peterbilt, 1977 Ravens and 1979 Pontiac) | 65,000.00 |
| 5.  | Note, First Security Bank, Livingston, Montana | 9,432.55 |
| 6.  | Hager Welding, Missoula, Montana | 168.00 |
| 7.  | Tire-Rama, Billings, Montana | 692.80 |
| 8.  | Mountain States Telephone & Telegraph | 210.44 |
| 9.  | Park Electric Co-op | 134.15 |
| 10. | Park Clinic, Livingston, Montana | 107.10 |
|     | TOTAL LIABILITIES | $112,073.34 |

The court awarded Gloria the following assets:

|    | Item | Value |
|----|------|-------|
| 1. | Money taken by Gloria Peckenpaugh when she left | $2,200.00 |
| 2. | Personal property taken by Gloria Peckenpaugh when she left, now in her possession | 2,233.00 |
| 3. | Personal items owned by petitioner left in the mobile home | Value Undetermined |

Keil was awarded the remaining assets.

The court further found:

> "That by reason of the Court distributing all of the assets wherein the respondent can reside or can make a living or has the use of such as the automobile, the respondent should then be responsible for the indebtedness of $47,073.00 plus the indebtedness to his father, O. F. Peckenpaugh of $65,000.00."

-3-

The District Court originally awarded maintenance to Gloria of $500 per month for a two year period. After considering an affidavit and arguments of Keil, the court amended the maintenance payments to $300 per month for 40 months, with the same total of $12,000 as previously awarded.

In support of its findings and conclusions, the court prepared a memorandum which stated:

"The above case presented some difficult questions in the light of the extensive indebtedness owed by the parties. However, if you exclude the indebtedness to the respondent's father, the indebtedness is not great in light of the assets that the respondent is retaining. Number one - the respondent has a home to live in, he has a new automobile, an expensive truck and trailer with which to make a living and a Honda motorcycle. In contrast to that we find that the wife has had $2,000.00 plus $2,230.00 worth of personal property and some additional assets left in the home. The wife is without particular training with which to make a living while the husband has the truck with which he can make a fairly substantial living if he so desires and the wife is desirous to seek and maintain herself as a beauty operator but needs to attend school. Obviously she has no assets with which to do so.

"If you examine the overall picture, it is seen that the petitioner has not only served as a housewife but served as a mother for the children of the respondent during the period of marriage, cared for them, provided for them and in addition she worked along with the respondent in the trucking business driving a truck. From all of that it is clear that she should not be put out in the world to fend by herself as best she can following the dissolution of the marriage without any assets whatsoever. . .

"The legislature in 40-4-202 provided that in dividing the property the Court shall consider the health, station, occupation, amount and sources of income and vocational schools, as well as the opportunity for each for the future acquisition of capital assets and income. In Section 40-4-203, MCA, the legislature directed that in awarding maintenance that the Court should consider the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment. This then was followed by me in making the decision I reached.

-4-

"As stated in the findings, the Court is not persuaded by the idea that the respondent is going to be disinherited by his father. His testimony was to the effect that he was disinherited by reason of his marriage to the petitioner but this is terminated and dissolved and he is the only heir of his father who is a man of substantial means and for this reason the Court did not give as much weight to the indebtedness to the father as you would if this were owed to a banking institution. The petitioner did testify that the advance of this money was to be an advance distribution of his inheritance and subsequent to that time a promissory note was executed but the Court is not convinced that if there is a failure to pay on a due date the father will foreclose upon the son. In any event, the son has the capability of earning money from the use of the truck and can, therefore the petitioner is entitled to rehabilitation to enable her to make a living and for this reason the same has been ordered."

The standard of review of the District Court is set forth in Rule 52(a), M.R.Civ.P., as follows:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness."

We have held that this Court's function is to review the lower court's findings in light of the record to make certain the findings are not clearly erroneous. In re Marriage of LeProwse (1982), ___ Mont. ___, 646 P.2d 526, 39 St.Rep. 1053; Jensen v. Jensen (1981), ___ Mont. ___, 629 P.2d 765, 38 St.Rep. 1109.

The District Court placed with Keil the responsibility for all the marital liabilities as well as requiring maintenance payments for 40 months. Keil was also given the benefits of the indebtedness in a home, a new automobile, and a tractor-trailer with which to support himself. Gloria received $2,200 in cash, some personal belongings and is without a means of support, although she would like to attend classes at a beauty college. Keil has a gross income of $1,500 per month. The court, after considering Keil's

-5-

monthly expenses, found that he was able to pay Gloria $300 per month maintenance enabling her to attend a beauty college. We find no clear error by the District Court in requiring the maintenance payments.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices