No. 82-437

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

IN RE THE MARRIAGE OF

LOUISE I. PARENTEAU,

Petitioner and Respondent,

-vs-

MITCHEL J. PARENTEAU,

Respondent and Appellant.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
William J. Speare, Judge presiding.

Counsel of Record:

For Appellant:

Jerrold L. Nye, Billings, Montana

For Respondent:

Robert W. Holmstrom, Billings, Montana

Submitted on Briefs: February 3, 1983

Decided: May 31, 1983

Filed: MAY 31 1983

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mitchel Parenteau (respondent) appeals from the division of marital property by the Thirteenth Judicial District Court, Yellowstone County, in its order granting Louise Parenteau's (petitioner's) petition for dissolution of the parties' second marriage to each other. We affirm the District Court, but remand for modification of the judgment.

Respondent raises the following issues for review:

1. Whether it was an abuse of discretion for the District Court to adopt verbatim the findings of fact and conclusions of law of petitioner.

2. Whether the award by the District Court to petitioner of the entire equity in the marital home is supported by the facts at trial and the applicable law.

3. Whether the valuation of personal property awarded to the respondent is supported by the evidence.

4. Whether the respondent is entitled to reimbursement of his contribution during the second marriage to pay off a certain loan taken by petitioner to pay his equity in the marital home from the first divorce of the parties.

5. Failure of the District Court to find and award property divided before trial by stipulation of the parties.

The parties were first married in 1959 and divorced in 1976; they remarried each other in 1978 and divorced in 1982. There were no children of either marriage. The family home comprised the bulk of marital assets in 1976 and in 1982.

In the 1976 dissolution, the court determined that the marital assets should be equally divided. Respondent was awarded savings and miscellaneous sports equipment, tools, vehicles, basement furniture, and an organ, much of which he brought into his remarriage to petitioner. Petitioner was

2

awarded household goods and furnishings, a vehicle, a stereo and records, in addition to the family home. She brought many of these assets to her remarriage to respondent. Under the provisions of the 1976 decree, petitioner was required to pay respondent $9,950 (one-half the difference in value of assets awarded) in order to obtain ownership of the home. In 1976, she mortgaged the home, and took out an $11,000 loan from the Yellowstone Bank in Laurel. She then paid respondent $9,950, obtaining in return a quitclaim of his interest in the home. In 1978, petitioner still owed the bank $9,268.

In 1978, petitioner took out a $20,000 real estate loan from the Yellowstone Bank. Of this amount, $9,268 went to pay off the 1976 loan, and $10,700 was loaned to respondent for payment of a property settlement in his divorce from another woman. In October of 1978, $10,936 from respondent's sale of certain property in Laurel was applied to the $20,000 real estate loan in satisfaction of petitioner's $10,700 loan to him.

Shortly after they remarried, the parties legally established joint ownership of their checking account, the house in Laurel previously in petitioner's name, and a two-and-one-half acre parcel with several buildings on it, in the Swan Valley, known as "the Condon property," previously in respondent's name. The parties disagree as to their purpose in creating joint ownership in the real property. According to petitioner, it was a matter of convenience; according to respondent, they intended that each should have a 50% interest in both properties. During the marriage, respondent made some improvements on the Laurel home, painting and installing new appliances and carpeting; costs for this work came from the parties' joint checking account.

3

For a time the Parenteaus planned to sell the Laurel home and move to the Condon property. With this in mind, they borrowed $22,000 from the bank in May of 1979, paid off the $6,989 owing on the $20,000 real estate loan, and applied the remaining $15,011 to remodeling buildings on the Condon property and upgrading that property. Certain of the costs were paid from the joint checking account.

In October of 1980, after the Parenteaus decided to remain in the Laurel home, they sold their Condon property for $19,550. Respondent claims that the property, which was debt-free, had been appraised at $40,000 a few years earlier. (The Parenteaus recognized the loss on their joint tax return.) $9,427 from the sale of the Condon property was applied to the $22,000 bank loan made in 1979; the remainder was spent on a trip to Australia, a vehicle subsequently awarded to the husband, and various expenses paid from the joint checking account.

During the marriage, all income and virtually all expenditures, including loan payments, passed through the Parenteaus' joint checking account. Respondent's monthly retirement income of $894.82 (plus $419.25 for petitioner) and petitioner's monthly retirement income amounting to $969.73 (plus $350.05 for respondent) after petitioner's retirement in 1980, were deposited in the joint checking account.

In 1982, the parties were again divorced. Trial was held June 1, 1982. At that time, the balance owing on the 1979 real estate loan for $22,000, was about $5,000. Findings of fact and conclusions of law were entered September 10, 1982; judgment was entered September 13, 1982.

The District Court found the marital assets amounted to $83,000.00, and divided them as follows:

4

## "TO THE WIFE:

### Assets:

| | |
|---|---|
| "House | $57,500.00 |
| 1976 Buick | 2,175.00 |
| Lowry Organ | 2,000.00 |
| Piano | 1,000.00 |
| Stereo | 200.00 |
| New television | 500.00 |
| Miscellaneous household furniture and household goods | 1,900.00 |
| Miscellaneous appliances | 500.00 |
| Record collection | 350.00 |
| [Microwave oven] | [150.00] |
| Collection of National Geographic magazines and antiques received from wife's parents | No Value |
| Total Assets | $66,275.00 |

### Liabilities:

| | |
|---|---|
| Yellowstone Bank, mortgage on home | $ 5,000.00 |
| Net worth of wife | $61,275.00 |

### TO THE HUSBAND:

| | |
|---|---|
| 1980 Chevrolet pickup | $ 5,650.00 |
| Colorado pickup camper | 1,200.00 |
| 17 Ft. Larson inboard/outboard boat, trailer and 120 hp Mercury motor | 4,000.00 |
| 14 Ft. Aluminum boat, trailer and motor | 1,500.00 |
| Miscellaneous boating equipment consisting of depth finder, skis life jackets, fishing tackle, et cetera | 500.00 |
| Camera equipment | 575.00 |
| Guns | 1,700.00 |
| Miscellaneous tools, drills, grinders, lathes, saws, welders, et cetera | 6,100.00 |

5

```
Metal detector                                    400.00

Basement furniture consisting of
couch, chair and stove                            100.00

Net worth of husband                         $21,725.00"
```

The District Court listed the total value of assets awarded petitioner as $66,275, but awarded her specific assets totaling only $66,125 in value. Because the only marital asset not awarded to either party was the microwave oven valued at $150, we assume that item was meant to be awarded to petitioner.

Respondent maintains that the District Court's virtually verbatim adoption of petitioner's proposed findings of fact and conclusions of law amounts to an abuse of discretion. Respondent concedes that where the adopted findings and conclusions are supported by the evidence, they will not be disturbed on appeal.

This Court has repeatedly stated its position that findings and conclusions which are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and which are supported by the evidence, i.e., are not "clearly erroneous" in light of the evidence, will not be overturned simply because the trial court relied upon proposed findings and conclusions submitted by counsel. Kowis v. Kowis (1983), ____ Mont. ____, 658 P.2d 1084, 1088, 40 St.Rep. 149, 154; In re Marriage of Hunter (1982), ____ Mont. ____, 639 P.2d 489, 495, 39 St.Rep. 59, 67; In re Marriage of Jensen (1981), ____ Mont. ____, 631 P.2d 700, 703-04, 38 St.Rep. 1109, 1113. Because the remaining questions raised by petitioner are primarily challenges to the sufficiency of evidence to support valuations and awards of assets, this first question may be resolved by a resolution of the remaining issues.

Respondent argues that the District Court abused its discretion in awarding petitioner the entire equity in the family home. He asserts first that Finding of Fact No. VI is "not supported by the clear evidence at trial," and the District Court's conclusion therein establishes no equitable right in petitioner to the entire equity in the Laurel home.

Finding of fact No. VI states:

"That during the parties' marriage the title to the family home was transferred to their joint names and the Condon property was placed in their joint names; respondent claims that the title to the property was so transferred in connection with an oral antenuptial agreement that they were to each own a 50 per cent interest in the property, however, the petitioner denies that there was any such agreement and has testified that it was done merely to keep peace in the family; the Court finds that there was no valid antenuptial arrangement agreement and that the transfer was done merely for convenience sake." (Emphasis supplied.)

In dissolutions of marriage, the award of marital property is not controlled by the name on the title or the source of the asset. Section 40-4-202, MCA establishes the authority of the court to "finally equitably apportion between the parties the property and assets belonging to either or both, however and wherever acquired and whether the title thereto is in the name of the husband or wife or both." See Morse v. Morse (1977), 174 Mont. 541, 571 P.2d 1147. (Property quitclaimed to husband by wife before dissolution held to be part of marital estate. Vacated on other grounds.)

Since the age, income, needs, and opportunities for future acquisition of capital by the parties appear to be fairly equal, the most important factor of those listed in section 40-4-202, MCA, and obviously that weighing most heavily in the court's award of assets, is the relative contribution of each spouse to the marital estate. In Finding of Fact No. X, the District Court stated:

7

"The major asset of the parties is the family home which was owned by the wife at the time of the marriage; that during the marriage her contributions in the form of money to the joint living expenses of the parties exceeded that of the respondent by an amount in excess of $12,000.00 and in addition thereto she performed the household duties of cooking, cleaning house, washing, et cetera; that the respondent's contributions in addition to his retirement benefits as herein specified consisted of the proceeds from the sale of the Condon property; however, said proceeds were less than the monies borrowed upon the family home used to complete the improvements on the Condon property and in addition thereto the respondent performed certain minor maintenance upon the family home; having in mind the assets that each brought into the marriage and the contributions of each to the maintenance of those assets and the acquisition of additional assets, the Court finds the assets of the parties should be divided as follows: [List of property awarded, see infra.]" (Emphasis supplied.)

There is ample evidence on the record to support these findings by the trial court. But respondent argues that because his substantial contributions to the joint checking account helped pay off a series of mortgages against the Laurel home, and because his remodeling efforts enhanced the value of that home, it was an abuse of discretion for the District Court to award the entire equity in the Laurel home to petitioner.

We do not agree. After the contribution of each party is weighed, any equity the respondent might have in the Laurel home is so insignificant that it does not warrant a reversal. The record supports the District Court's finding. At the time the parties remarried, the petitioner was sole owner of the house, having paid off respondent's equity two years earlier. Thus, petitioner contributed the Laurel house to the marital estate. She also contributed over $12,000 more in her work and retirement earnings than did respondent over the four years of the second marriage. It is true that the $19,550 received for the Condon property was deposited in the joint checking account; but much of that money was spent

8

on the parties' trip to Australia and the purchase of the 1980 pickup and camper awarded to respondent. Furthermore, $15,000 of the $22,000 borrowed against the Laurel home was spent on improving the Condon property. Approximately $5,000 remained for petitioner to pay after the 1982 dissolution.

> "The standards governing review of a district court's property distribution . . . are well-settled in Montana. The District Court has far-reaching discretion in making property divisions. Torma v. Torma (1982), ____ Mont.____, 645 P.2d 395, 399, 39 St.Rep. 839, 843; Zell v. Zell (1977), 174 Mont. 216, 220, 570 P.2d 33, 35.

> "The reviewing court does not substitute its judgment for that of the trial court, and will not alter a judgment unless it finds an abuse of discretion, i.e., that the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. Torma, 645 P.2d at 399, 39 St.Rep. at 843; Zell, 174 Mont. at 220, 570 P.2d at 35; Creon v. Creon (1981), ____ Mont.____, 635 P.2d 1308, 1309, 38 St.Rep. 1828, 1830."

> ". . .

> "[W]hile a district court, in its discretion, may equally divide the marital assets, section 40-4-202, MCA, does not mandate equal distribution. Martens v. Martens (1981), ____ Mont.____, 637 P.2d 523, 526, 38 St.Rep. 2135, 2138; In re Marriage of Aanenson (1979), ____ Mont. ____, 598 P.2d 1120, 1123, 36 St.Rep. 1525, 1528." Kowis v. Kowis (1983), ____Mont.____, 658 P.2d 1084, 1087-88, 40 St.Rep. 149, 153.

Here, the assets brought to the marriage by petitioner were substantially greater than those contributed by the respondent, and included in the family home; petitioner's contributions during the marriage exceeded respondent's. We find no "substantial injustice" in the award of the entire equity in the Laurel home to petitioner.

Respondent next argues that the District Court overvalued certain of the assets awarded him, relying on an unsupported and biased estimation of values submitted by petitioner. He asserts that a pickup camper purchased for $700 was valued at $1,200; that a boat and trailer purchased

for $500-600 was valued at $1,500; that another boat and motor valued at $4,000 in 1976 and only slightly improved was again valued at $4,000; and that tools valued in 1976 at $2,000 and including, in addition, a $275 table saw and "some minor hand tools," were valued in 1982 at $6,100.

We note that petitioner testified at some length concerning how she arrived at the figures she did in evaluating the worth of marital assets. The transcript contains the following statements by petitioner:

"Q. Now, you've indicated that the value placed for the home is based upon an appraisal, is that correct? A. That's right.

"Q. And are the other values which are shown for the vehicles and other items of property your estimation of their value? A. Well, they're my estimation of the value, but in quite a few of them, I did make inquiries; and vehicles, I went to Frontier Chevrolet and got their blue book prices, what they were worth, and I did the same with the boats. I went to Montana Marina and talked to a man there and described them as best I could, and he gave me prices on those, what he thought they would be worth.

"Q. Would the same thing be true relative to the guns and tools and the -- A. Yes. The guns, I had a gunsmith look at those, and he had his books -- He had three or four books there, and he looked each one up.

"Q. So after having done that, then would I be correct in my understanding that you believe the values which are shown on Petitioner's proposed Exhibit 4, then, is your estimation of the value of the various items of personal property? A. Yes, it is. [Tr. at 12-13]

" . . .

"Q. Did you have somebody else out and and look at [the tools]? A. No. I made a list of them and took it to someone else and talked to them, and someone that knew about tools. I suppose he would have come up if I would have asked him to. [Tr. at 38]

" . . .

"Q. Did you use the blue book values when you came up with that $4,000? [Valuation of Larson boat] A. No, I didn't. I talked to one of the men in the shop, and from my description, he gave me -- And he asked some questions, and I answered them

10

the best I could; and he gave me that, and that sounded like a good estimate to me but he didn't use a book, no. [Tr. at 44]"

Respondent testified that, although he had not had items appraised, he considered them to have certain values because of purchase price, deterioration or improvement.

The standard of review in considering a District Court's resolution of disputed facts was stated in Cameron v. Cameron (1978), 179 Mont. 219, 227, 587 P.2d 939, 944:

"Although conflicts may exist in the evidence presented, it is the duty of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence, unless there is a clear preponderance of evidence against such findings. [Olson v. Westfork Properties, Inc. (1976), 171 Mont. 154, 557 P.2d 821, 823, 33 St.Rep. 1133]: Butte Teachers' Union v. Board of Education of School District No. 1, Silver Bow County (1977), Mont., 567 P.2d 51, 53, 34 St.Rep. 726; Rule 52(a), M.R.Civ.P."

We do not find a clear preponderance of evidence against those valuations submitted by petitioner. Therefore we will not disturb the District Court's adoption of those values.

Respondent maintains that the District Court erred in including in the marital estate certain items of "personal property," such as his guns, tools, boats, and petitioner's household goods, which were brought into the marriage by each party, and whose value was altered little by contributions of either during the marriage. Respondent relies upon this Court's decision in In Re Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361, and In Re Marriage of Herron (1980), _____Mont._____, 608 P.2d 97, 37 St.Rep. 387. Brown held that where the homemaking contributions of the non-acquiring spouse (wife) were substantial, the award to her of $25,000 of an estate valued at $350,000 or more was inequitable, even though the property was inherited solely by the husband. Herron held that to the extent that the value of marital

11

property acquired by one spouse was not enhanced by contributions of the other spouse, the trial court should not have equally divided those items. Nothing more. The cases do not suggest that the District Court must, on pain of reversal, exclude such property from the marital estate. Rather, the cases relied upon by respondent stand for the proposition stated in Herron that "[i]f none of the value of the property is a product of contribution from the marital effort, the District Court can justifiably find that the non-acquiring spouse has no interest in the property." 608 P.2d at 101, 37 St. Rep at 392. This finding would affect the award of the property, but not its inclusion in the marital estate. As section 40-4-202, MCA, indicates, the equitable distribution of the parties' property in a dissolution proceeding includes "the property and assets belonging to either or both, however and whenever acquired." Furthermore, the District Court did award respondent the guns, tools and boats, and awarded petitioner the household goods, with the exception of certain basement furniture. We find no error here.

Respondent next asserts that he is entitled to reimbursement of $4,630 for his contribution, during the second marriage, to retiring the 1976 loan permitting petitioner to purchase his equity in the Laurel home. He argues that effectively he "has been required to pay his own 1976 divorce settlement."

We do not agree. In the first place, the parties owed no financial obligation to each other when they remarried; respondent's equity in the house had been purchased by petitioner in 1976 pursuant to the terms of the first divorce decree. It is true that respondent contributed his retirement income and the proceeds from the sale of the

12

Condon property to the joint checking account, and that payments made on successive refinancing loans against the Laurel home came from that joint account. But what respondent urges here is nothing more nor less than recognition by this Court of respondent's equity in the Laurel home. We have already rejected that argument, finding sufficient evidence to support the District Court's findings that petitioner's significantly greater contribution to the marital estate supports an award to her of full equity in the Laurel home.

Finally, respondent claims that because the District Court failed to expressly recognize a stipulation by the parties, he is unable to obtain certain property to which he is entitled.

The transcript contains the following statements:

"[Counsel for Petitioner]:

[P]rior to this time, we've stipulated that [respondent] may have the stove and refrigerator in the basement, as well as the refrigerator in the shop. That's not in issue that I know of. We are prepared to stipulate to it on the record.

[Counsel for respondent]:

Fine."

The findings and judgment make no reference to this stipulation, but do award respondent basement furniture consisting of couch, chair and stove. It is clear from the transcript that the stipulation included the "refrigerator in the basement as well as the refrigerator in the shop." To the extent that the record indicates agreement by the parties to divide property, the findings and judgment should be amended to include that agreement.

We affirm the District Court, but remand for amendment of the findings and judgment as to the final issue only.

13

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

14

Mr. Justice Daniel J. Shea specially concurring:

I join in the result but adhere to my opinion that findings and conclusions adopted verbatim by a judge without any supporting indication that the case was independently considered and decided, are, among other things, in violation of Canon 19 of the Canons of Judicial Ethics. Beyond this, however, a judge owes it to his profession, to the parties, to the lawyers, and to the public, to provide the indicia that he rather than the lawyer, has done the necessary work leading to a decision. Verbatim parroting of findings and conclusions, with nothing more, hardly fulfills these duties.

_____
Justice