No. 85-60

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN RE THE MARRIAGE OF
VULLOY B. JONES,

Petitioner and Respondent,

and

LARRY JONES,

Petitioner and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ellingson & Moe; Jon E. Ellingson, Missoula, Montana

For Respondent:

Terry A. Wallace, Missoula, Montana

Submitted on Briefs: July 25, 1985

Decided: November 19, 1985

Filed: NOV 19 1985

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Larry Jones appeals an order of the Missoula County District Court directing him to pay his ex-wife, Vulloy, $4,851.67 as back payments of maintenance and $2,146 as reasonable attorney's fees. The issues on appeal are: (1) whether the District Court erred in ruling that husband owed wife maintenance upon his cessation of child support payments to her; (2) whether the District Court erred in only partially enforcing wife's promissory note to husband; and (3) whether the District Court erred in granting wife her attorney's fees. Affirmed in part and remanded.

In August 1979, Larry and Vulloy Jones filed a joint petition for dissolution of marriage in Missoula County District Court. A final decree dissolving their marriage was entered that same month. As the Jones' joint petition had requested, the final decree granted full custody of the parties' two minor children to the wife. The final decree orders the husband (appellant) to pay $150 per month per child to the wife (respondent). In the paragraph which immediately follows that provision, the decree states;

> Upon termination of the child support obligation, LARRY E. JONES shall pay to VULLOY B. JONES the sum of $100.00 per month, as and for her maintenance, until her remarriage or death.

These provisions of the final decree also mirror the language of the Jones' joint petition for dissolution.

Appellant paid the $150 per month per child payments until April 1980. In early 1980, respondent decided to move to California and she approached appellant for a $1,000 loan. Appellant agreed to loan respondent $1,000 if she would sign a promissory note in his favor for $2,000.

Appellant testified that he asked respondent to sign the $2,000 promissory note because respondent owed him well over $1,000 prior to the $1,000 loan. Appellant testified that respondent owed him over $1,000 (before the loan) for money he had given her in addition to the child support payments, for a pickup truck he loaned her to use, for a trailer hitch he put on her car, and for her parking tickets he had paid.

Respondent testified that appellant told her he did not expect her to pay the note but that he needed the note for income tax purposes. She also testified that appellant had loaned her a pickup truck for her use. Respondent denied or did not remember that appellant had given her other money or support.

Respondent signed the $2,000 promissory note and appellant then gave her $1,000. The note carried 14% interest and was due on February 13, 1981. Respondent then moved to California in April 1980.

Upon respondent's move, the parties' two minor children went to live with their father. Appellant raised and supported the children beginning in April 1980. Appellant did not make the child support payments to his ex-wife that month or thereafter. Appellant did not commence maintenance payments to his ex-wife until forced to do so by this lawsuit.

In August 1983, respondent filed a petition for enforcement of decree. Respondent alleged that appellant's child support obligations had ended in April 1980 and that, under the terms of the final decree, appellant owed her maintenance from that time. Appellant filed a response to the petition and a counterclaim. As his counterclaim, appellant alleged that respondent had not paid the promissory

3

note, which was due. Respondent answered the counterclaim admitting that she had not made any payments on the note but alleging that she had not received sufficient consideration for the $2,000 note. She further alleged that appellant fraudulently induced her to sign the note.

In October 1984, the District Court issued its findings of fact, conclusions of law and order. The District Court found that, under the final decree, respondent was to receive maintenance of $100 each month upon termination of appellant's child support obligation. The court found that appellant's child support obligation terminated in February 1980. The court further found that appellant had made no maintenance payments. The court concluded that appellant owed respondent $6,505, including interest, for maintenance arrearages.

The court found that respondent was entitled to recover her reasonable attorney's fees on this action. The court ruled that one-third of the recovery of $6,505 (or $2,146) was a reasonable attorney's fee.

Lastly, the court found that respondent owed appellant $1,653.33, including interest, on the loan made to her by appellant. The court offset this amount against what appellant owed respondent in maintenance arrearages.

The first issue is whether the District Court erred in ruling that appellant owed respondent maintenance upon his cessation of child support payments to her. The standard of review for that decision is set forth in Rule 52(a), M.R.Civ.P;

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

4

This Court's function is to review the district court's findings in light of the record and make certain the findings are not clearly erroneous. Carr v. Carr (Mont. 1983), 667 P.2d 425, 40 St.Rep. 1263; Peckenpaugh v. Peckenpaugh (Mont. 1982), 655 P.2d 144, 39 St.Rep. 2132.

The final decree provided that appellant would pay respondent maintenance upon the termination of his child support obligation. Appellant contends that this child support obligation (the termination of which would trigger his maintenance obligation) refers to his general duty to support and raise his children. Appellant correctly cites Torma v. Torma (1982), 198 Mont. 161, 645 P.2d 395; and Chrestenson v. Chrestenson (1979), 180 Mont. 96, 589 P.2d 148, for the proposition that a parent's general obligation to support his child ends upon that child's emancipation at age eighteen. See also §§ 40-4-208(5), 41-1-101, 40-6-211, MCA. Appellant did meet this general obligation of support while his children lived with him (and presumably until they were eighteen). Therefore, appellant asserts that the child support obligation ended upon his youngest child's eighteenth birthday and that his maintenance obligation arose on that date. The resolution of this issue hinges on whether the child support obligation referred to in the final decree is that general obligation cited in Torma and Chrestenson.

In effect, the District Court found that the child support obligation (as referred to in the final decree) was the specific, monthly payments to be made by the appellant and not appellant's general obligation. Hence, once appellant stopped the monthly payments, his maintenance obligation began. This conclusion is supported by the fact that the reference in the final decree to the termination of

5

the child support obligation followed directly after the court's order of monthly child support payments. Thus, it is inferable that the disputed child support obligation (the termination of which triggered the maintenance payments) was that obligation set up in the immediately preceding sentence. More importantly, the court, in making this ruling, was interpreting its own final decree. We decline appellant's invitation to second guess the District Court's interpretation of its own decree. We hold that the District Court's ruling, that appellant's maintenance obligation began when he stopped making monthly child support payments to respondent, was not clearly erroneous.

The second issue is whether the District Court erred in only partially enforcing respondent's promissory note to appellant. In 1980, respondent signed a $2,000 promissory note, with 14% interest, in appellant's favor. The lower court held that respondent owed appellant $1,653.33, including interest, up through October 1984. Respondent testified that the only other consideration she received for the note, besides the $1,000 loan, was the use of a pick-up truck. Thus, there was evidence to support the lower court's decision to only partially enforce the note. The lower court's ruling on this issue was not clearly erroneous and must be upheld.

The third issue is whether the District Court erred in awarding respondent her attorney's fees. Appellant contends that there was insufficient evidence to establish the reasonableness of the amount of the award and the need for the award. Appellant also complains that the District Court made no written findings as to the need for the award. Appellant cites the oft-repeated rule, ". . . that written

6

findings are required to establish both the need and reasonableness of an award of attorney's fees." See, e.g., Duffey v. Duffey (Mont. 1981), 631 P.2d 697, 699, 38 St.Rep. 1105, 1107.

There may be sufficient evidence in the record to find that the wife had a genuine need for the award of attorney's fees. She testified that she lost her job upon returning to California after what was apparently the preliminary hearing in this case. She also testified that she told appellant, prior to executing the promissory note, that there was no way she could repay him. However, the District Court made no findings of fact as to the wife's need for an award of attorney's fees.

In Duffey, the trial court failed to make essential written findings establishing both the need and the reasonableness of an award of attorney's fees. We held that this failure required that we vacate the award of attorney's fees, even though only $200 was awarded. Accordingly, we vacate the trial court's award of attorney's fees in the instant case.

Furthermore, we note that the District Court made findings as to the reasonableness of the amount of the award of attorney's fees. The court found that a reasonable attorney's fee for the recovery of $6,505 is one third of that amount. The court reasoned that one third is a standard attorney's fee for the recovery of an indebtedness.

On June 6, 1985, this Court filed its new Rules of Professional Conduct relating to the Client-Lawyer Relationship. Rule 1.5, entitled Fees, states at section (d):

7

> A lawyer shall not enter into an arrangement for, charge, or collect:
>
> (1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support . . .

There is no evidence in the record that there was a contingent fee agreement between the respondent and her attorney, but because the court may have considered the amount recovered as the sole basis for the award, and because of the lack of findings as to the need for the award, we vacate the award of attorney's fees and remand for reconsideration by the trial court and the entry of appropriate findings of fact.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8