NO.   93-013

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE PATERNITY OF **W.L.**, a Minor:

ELIZABETH **LAMDIN,**

    Petitioner and Appellant,

  v.

ANGELO FERRARA,

    Respondent and Respondent.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Donald L. Harris, Crowley, Haughey, Hanson, **Toole**
        and Dietrich, Billings, Montana

        For Respondent:

        Mark D. Parker, Parker Law Firm, Billings, Montana

Submitted on Briefs:  May 13, 1993

          Decided:  June 23, 1993

FILED

JUN 23 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The mother appeals from the findings, conclusions, and order entered in this paternity action in the District Court for the Thirteenth Judicial District, Yellowstone County. We affirm in part and reverse and remand in part.

The issues are:

1. Did the District Court err by not applying the uniform child support guidelines to determine child support?

2. Did the court err by failing to award the mother past child support?

3. Did the court err by failing to award the mother her lost wages during the period of her confinement?

4. Did the court err by failing to order the father to pay child support for W.L.'s college education?

5. Did the court err by failing to grant the mother sole custody of W.L.?

6. Did the court err by finding that the best interest of W.L. does not require that the mother remain home to raise him?

7. Did the court err by failing to award the mother her attorney fees and costs?

W.L. was sixteen months old at the time of trial. His mother, a registered nurse, and his father, a cardiologist, never married. As is indicated by the issues on appeal, the focus of this action is on child support, not on paternity, which has been conceded.

2

W.L.'s father, who now lives in another state, has an annual income of nearly $280,000. During the first year of W.L.'s life, the father voluntarily paid the costs of W.L.'s birth and $2,000 per month in child support. This allowed W.L.'s mother to stay home and raise him during that time. After W.L.'s first birthday, the father reduced his child support from $2,000 per month to $1,000 per month. W.L.'s mother returned to work and placed W.L. in day-care. Then she brought this action.

After a hearing, the District Court granted the parties joint legal custody of W.L. with the mother as residential custodian. It ordered the father to pay child support of $950 per month. It denied the mother's request for attorney fees and costs and her lost wages immediately after W.L.'s birth. The court did not grant the mother's requests that it order the father to pay for a college education for W.L. or that it order the father to pay past child support. The mother appeals.

I

Did the District Court err by not applying the uniform child support guidelines to determine child support?

The District Court found that, from the evidence presented, necessary expenses for the care of W.L. are no more than $700 per month. The court concluded that the child support guidelines apply. It stated, however, that

> [c]hild support is meant to support the child, not the custodial parent of the child. The noncustodial parent has no obligation to support the custodial parent. Child

3

> support should not be used as a subterfuge to award
> maintenancetothe custodial parent. [Citations omitted.]

As stated above, the court ordered child support of $950 per month. The mother contends that the uniform child support guidelines enacted by the Department of Social and Rehabilitation Services pursuant to § 40-5-209, MCA, require the father to pay $2,309.95 per month in child support.

The child support guidelines were amended after the hearing in this matter but before the court issued its findings, conclusions, and order. The effect of the amendment was to change the method by which child support is calculated on parental income in excess of $39,500 per year.

This Court recently held that district courts are to determine child support obligations according to the guidelines in effect at the time the court makes its decision. In re Marriage of Johnston (Mont. 1992), 843 P.2d 760, 763, 49 St.Rep. 1047, 1049. The amount of child support awarded in this case is therefore governed by the guidelines which took effect on July 31, 1992.

The July 31, 1992 guidelines determine child support in cases in which the parents' combined income exceeds $39,500 by adding 14 percent of the total income deemed available for child support purposes to a basic support amount. Section 46.30.1534, ARM. In making the child support order in this case, the District Court did not use that procedure.

4

A district court can depart from the guidelines, but only if it finds "by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or is inappropriate in that particular case." Section 40-6-116(6)(a), MCA. In such a situation, a district court is required to "state its reasons for finding that the application of such standards and guidelines is unjust to the child or a party or is inappropriate inthatparticular case." Section 40-6-116(6)(b), MCA. In this case, the District Court has not met those statutory requirements for departing from the guidelines.

We remand this case for reconsideration of the proper amount of child support to be paid by the father to the mother and, if necessary, for entry of the required findings and conclusions in support of the court's determination as to child support.

II

Did the court err by failing to award the mother past child support?

The mother asks for past child support to reflect the difference between the amount the father should have been paying under the child support guidelines and the amount he actually paid. She concedes that the proper amount of past child support is established under the guidelines then in effect as 13.65 percent of the first $39,500 of parental income, supplemented on a case-by-case basis from the remaining income. Section 46.30.1543(2), ARM (1990).

5

As discussed under Issue I, departures from the guidelines must comply with § 40-6-116(6)(a) and (b), MCA. On remand, the District Court is directed to make such adjustments to its findings, conclusions, and order concerning past child support as are necessary as a result of this Opinion.

### III

Did the court err by failing to award the mother her lost wages during the period of her confinement?

Section 40-6-116(3)(c), MCA, provides that, in a paternity action, the court may direct the father to pay "the reasonable expenses of the mother's pregnancy and confinement." The mother contends that, under that statute, she is entitled to $3,000 as compensation for the net income she lost during the last weeks of her pregnancy and the first six weeks after W.L. was born.

We decline to interpret § 40-6-116(3)(c), MCA, so broadly as to include lost wages as a reasonable exnense of the mother's pregnancy and confinement. We hold that the District Court did not err in failing to award the mother those lost wages.

### IV

Did the court err by failing to order the father to pay child support for W.L.'s college education?

Section 40-4-208(5), MCA, provides that a child support obligation terminates no later than the child's nineteenth birthday "unless the termination date is extended or knowingly waived by written agreement or by an express provision of the decree." The

6

mother cites this Court's opinion in Torma v. Torma (1982), 198 Mont. 161, 645 P.2d 395, as authority that a district court cannot later modify child support to extend beyond a child's emancipation unless the original decree so provided. She claims the District Court erred in assuming it would retain continuing jurisdiction so that it could later provide for W.L.'s college education.

Section 40-4-208(5), MCA, and Torma do not control the issue of future educational support in this case, however. The mother did not bring her action under Title 40, Chapter 4, MCA, which governs child support in the context of marriage dissolution actions. She, instead, brought her action under the Uniform Parentage Act, Title 40, Chapter 6, MCA. In the instant case, § 40-6-118, MCA, controls. That statute provides that "[t]he court has continuing jurisdiction to modify or revoke a judgment or order: (1) for future education and support[.]" (Emphasis added.)

Under that section of the code, the District Court retains jurisdiction to modify its initial support order to provide for the educational needs of the child. We therefore hold that the District Court did not err.

V

Did the court err by failing to grant the mother sole custody of W.L.?

There is no dispute about the actual custodial arrangement, just about whether it is called joint custody or sole custody. The mother contends that the court did not consider the factors

7

required pursuant to § 40-4-212, MCA, for deciding custody. She argues that the case should be remanded for entry of further findings on the issue of custody.

The father points out that the court heard a day's worth of testimony in this case, and that it was not disputed that the mother is doing a good job of raising W.L. or that she should be his primary custodian. He also points out the statutory presumption favoring joint legal custody. See § 40-4-222, MCA.

The District Court found that both parents and W.L. are in good health. It found that W.L. has lived with his mother since his birth and that the father has visited him on numerous occasions. These findings relate directly to factors listed under § 40-4-212, MCA, for determining the best interest of a child. The court made no findings which rebut the statutory presumption favoring joint custody.

We conclude that the court has met its obligation to state the determining factors upon which it based its decision on child custody in the best interest of W.L. We hold that the court did not err in failing to grant the mother sole custody of W.L.

VI

Did the court err by finding that the best interest of W.L. does not require that the mother remain home to raise him?

The mother claims that it would be in W.L.'s best interest for her to work only part-time, because she alone is raising him. She

8

proposed to work two days a week and to stay home with W.L. five days a week.

As the father points out, the court cannot order the mother to stay home and raise W.L. Best interest as defined at § 40-4-212, MCA, is used to determine the type of custody arrangement for a child, not to determine the employment status of the parents. We hold that the court did not err in finding that the best interest of W.L. does not require the mother to stay home to raise him.

## VII

Did the court err by failing to award the mother her attorney fees and costs?

The mother argues that, in light of the parents' relative incomes and the father's position that he should be obligated to pay only $600 per month in child support, the District Court committed reversible error by failing to award her reasonable attorney fees and costs.

Montana statutes do not provide for the award of attorney fees in a paternity action. We hold that the District Court did not err in failing to award the mother her attorney fees in this action.

Affirmed in part and reversed and remanded in part.

Chief Justice

9

We concur:

_John Conway Harrison_

_Karla M. Gray_

_Troy _____

_William E Hunt Sr_

_____

_____
Justices

June 23, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Donald L. Harris
Crowley, Haughey, Hanson, Toole & Dietrich
P. 0. Box 2529
Billings, MT 59103-2529

Mark D. Parker
Parker Law Firm
P. 0. Box 7212
Billings, MT 59103-7212


ED SMITH
CLERK OF THE SUPREME COURT
STATE-OF MONTANA

BY:_____
Deputy