No. 91-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
DENNIS KEITH SACRY,

   Petitioner and Appellant,

 and

SANDRA LOIS SACRY,

   Respondent and Respondent.

FILED

MAY 22 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the First Judicial District,
      In and for the County of Lewis & Clark,
      The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

   For Appellant:

     Mark P. Yeshe, Helena, Montana

   For Respondent:

     Ann L. Smoyer, Helena, Montana


       Submitted on Briefs: February 27, 1992

           Decided: May 22, 1992

Filed:

_____
      Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Dennis Keith Sacry appeals from a decree of dissolution from the First Judicial District Court, Lewis and Clark County.

We affirm.

Appellant raises four issues for our consideration.

1.    Did the District Court err in awarding maintenance to respondent?

2.    Did the District Court err in computing child support?

3.    Did the District Court err in not apportioning child support?

4.    Did the District Court err in the distribution of the marital estate?

Appellant and respondent, Sandra Lois Sacry, were married on August 16, 1969. Three children were born during the marriage. At the time of trial, the oldest was 20 years old and did not live at home. The other two children, one 17 years old, and one 13 years old, lived primarily with the respondent.

Prior to the marriage, appellant received his undergraduate degree from Carroll College while respondent achieved her three year nursing certificate. Appellant began his career in dentistry upon graduation from dental school in 1974. Both parties contributed financially to appellant's successful completion of dental school. Appellant was able to obtain loans and grants to pay for his education, while respondent worked as a registered

2

nurse to pay for living expenses. After appellant graduated from dental school, the couple moved to Whitehall. The citizens of Whitehall had built a medical/dental building for appellant and his uncle, who was a physician. Respondent worked as a nurse for appellant's uncle until the youngest child was born in 1978. In 1979, respondent returned to work for appellant as an office manager and dental assistant.

Since the opening of appellant's practice, the business has thrived. In 1985, appellant expanded his practice to include Butte. In 1989, he purchased a dental practice in Harlowton. In addition, appellant rented an office in Scobey to perform orthodontic work. Appellant also purchased an airplane in order to maintain his diverse geographical practice.

The couple separated in 1988, prior to the acquisition of the Harlowton and Scobey practices. Respondent stopped working for appellant and obtained a nursing position at a psychiatric hospital in Butte. At the time of trial, respondent was still working at the hospital and attending college at Bozeman.

Over the years, the couple accumulated a considerable amount of marital assets. The marital estate consisted of investment funds, gold and silver, IRAs, retirement moneys, several vehicles, and various bank accounts. The parties maintained a family home in Cardwell and they owned other real property in Whitehall and Harlowton. The parties also had a partnership interest in what was called the Sacry ranch.

3

At trial, the parties stipulated to most of the valuations of property. The parties disputed the value of the dental practice and its assets. Each side presented their own expert witness regarding the value of the dental practice.

On March 22, 1991, the District Court issued it findings of fact and conclusions of law and decree of dissolution. The court found that the value of the marital estate totaled $586,675, with debts of $247,160. The net value of the martial estate distributed to appellant was $191,090 while the net value of the estate awarded to respondent was $128,425. The court ordered appellant to pay respondent $31,333 to equalize the distribution of the estate. The court also awarded respondent maintenance of $300 a month for 18 months.

The parties were awarded joint custody of the two minor children who primarily reside with respondent. The court ordered appellant to pay child support in the amount of $1763 a month. Appellant appeals the District Court's findings set out in the decree of dissolution.

On May 16, 1991, appellant filed a motion requesting the court to amend its findings and order, or to alter its judgment. On June 27, 1991, the court denied appellant's motion. On July 19, 1991, appellant filed his notice of appeal.

I.

Did the District Court err in awarding maintenance to respondent?

4

In reviewing an award of maintenance, this Court's role is limited to a determination of whether the District Court's findings are clearly erroneous. In Re Marriage of Eschenbacher (Mont. 1992), 49 St.Rep. 392, 394. The court may award maintenance if it finds that the spouse seeking maintenance:

> (a) lacks sufficient property to provide for his reasonable needs; and
>
> (b) is unable to support himself through appropriate employment . . . .

Section 40-4-203(1), MCA.

To determine whether a spouse has "sufficient property," the court should consider whether the property is income-consuming or income-producing. In Re Marriage of Cole (1988), 234 Mont. 352, 356, 763 P.2d 39, 42. The court must also consider factors set out under § 40-4-203(2), MCA, when deciding the amount and duration of maintenance.

Respondent earns approximately $29,000 a year working as a registered nurse and receives a $1,000 yearly allotment as an enrolled member of the Confederated Salish and Kootenai Tribes. Appellant, on the other hand, earns approximately $100,000 a year. The property that respondent received in the dissolution decree is mainly income-consuming property. Her nursing certificate is insufficient for her to advance in her career. Her income would not allow her to maintain her standard of living, nor would it enable her to complete her college courses necessary for a B.A. The District Court determined that for respondent to further

5

advance in her career as a nurse she would need to obtain her B.A. degree. We hold that the award of maintenance by the District Court was not clearly erroneous.

II.

Did the District Court err in computing child support?

In reviewing child support, this Court has stated that a presumption exists in favor of the district court's determination, and this Court will reverse the district court only if it has abused its discretion. In Re Marriage of Graveley (1990), 244 Mont. 137, 139, 796 P.2d 585, 586-87.

The Department of Social and Rehabilitative Services adopted child support guidelines pursuant to § 40-5-209(5), MCA, which became effective on July 13, 1990. The underlying principle behind the adoption of the guidelines is that a child's standard of living should not, to the degree possible, be adversely affected because his or her parents are not living in the same household. 46.30.1501, A.R.M. The child support guidelines are used in conjunction with the factors set out in § 40-4-204, MCA, to determine the proper amount of child support awarded. The use of the guidelines creates a rebuttable presumption of the adequacy and reasonableness of child support awards. 46.30.1507, A.R.M.

In calculating child support, the court found that respondent had an annualized income of $28,143, a net value of assets of $160,590, and taxes of $7,140. The court found that appellant had an annualized income of $100,500, a net value of assets of

6

an annualized income of $100,500, a net value of assets of $198,800, and taxes of $34,000. The District Court used the 26.1 percentage of parental income, as stated in the guideline tables, to arrive at the child support amount. The court ordered appellant to pay $1,763 a month in child support, and allowed him to claim the minor children as dependents for income tax purposes.

Appellant contends that the District Court did not list which "income attributable to assets" were included or excluded. However, appellant did not provide the court with any documentation relating to his disposable income, nor did he provide the court with any computation regarding how much he should pay in child support. Respondent provided the court with her support calculation which was prepared by her accountant. The amount the court awarded closely approximated the testimony of the accountant and the amount appellant was paying prior to the decree of dissolution.

Appellant also contends that the 26.1 percentage should be reduced because it is not applicable to incomes greater than $39,500. While it is true that the guideline tables do not apply to incomes greater than $39,500, exclusions from the guidelines are set out in 46.30.1543, A.R.M.

> When incomes exceed this amount the first $39,500.00 should first be applied in the appropriate column and line which shows the number and age of the child to arrive at a minimum support amount. The minimum support amount should be supplemented out of the remaining parental income. The amount of the supplement must be determined on a case-by-case basis.

7

46.30.1543(2), A.R.M. Thus, the court is given broad discretion in determining the appropriate amount of child support. The District Court properly considered the financial situation of the parties, the needs of the children, and used 26.1 percent to calculate child support. We hold that the District Court did not abuse its discretion in the calculation of child support.

### III.

Did the District Court err in not apportioning child support?

Appellant argues that because one of the minor children turned 18 on December 28, 1991, the District Court should have provided for future adjustment for lower child support payments after the child turned 18. Specifically, he contends the court should have apportioned the support between the two minor children and allowed appellant to terminate support without having to go through the expense of a motion. Appellant fails to cite any authority for this proposition.

Procedure for modification of child support payments is governed by § 40-4-208, MCA. Upon motion of a party, the district court may modify child support payments. Section 40-4-208(1), MCA. Section 40-4-208(5), MCA, provides in pertinent part:

> Provisions for the support of a child are terminated by emancipation of the child or the child's graduation from high school if the child is enrolled in high school, whichever occurs later, but in no event later than the child's 19th birthday, unless the termination date is extended or knowingly waived by written agreement or by an express provision of the decree.

8

No provision in the decree states when child support should be terminated. When the second child reaches age 18, or graduates from high school, whichever occurs later, appellant may then petition the court for modification of child support. We hold the District Court did not abuse its discretion in not apportioning child support payments.

IV.

Did the District Court err in the distribution of the marital estate?

Appellant's main contention is that the District Court should not have included the Scobey and Harlowton practices in the division of the marital estate, and that the court's valuation of appellant's dental practice was too high.

Our standard of review in the division of marital property is whether the district court's division of the marital estate is clearly erroneous. Interstate Production Credit Assn. v. DeSaye (Mont. 1991), 820 P.2d 1285, 1287, 48 St.Rep. 986, 987.

Appellant argues that the Scobey and Harlowton practices should not have been included in the marital estate because they were acquired after the parties had separated. The general rule for the court to value the marital estate is at or near the time of dissolution, unless unique circumstances of the marital relationship exist. In Re Marriage of Swanson (1986), 220 Mont. 490, 495, 716 P.2d 219, 222.

Respondent had worked for appellant as an office manager and dental hygienist for several years. Her assistance allowed him to develop, maintain, and expand a successful dental practice. Appellant has failed to offer evidence of any unique circumstances which would lead the District Court to value the dental practice at the time of separation. We hold that the District Court's inclusion of the Harlowton and Scobey practices in the marital estate was not clearly erroneous.

With regard to the valuation of the dental practice, at trial each side presented an expert to testify about the value of appellant's dental practice. Appellant's expert, Mr. Fladmo, a CPA, testified that the value of the dental practice was $65,000. Respondent's expert, Mr. Danzer, also a CPA, testified that the practice was worth $200,000. The District Court believed that the first valuation was too low because the expert failed to give sufficient consideration to the lack of competition of dental practices in rural areas and appellant's increased income over the past two years. The court reasoned that the second valuation was too high because the expert based his calculations from a study which used cities that are large by Montana's standard and that the practice was unique because it was located in four separate areas. The court averaged the two valuations to arrive at $133,000. The averaging of values given by experts to arrive at an equitable distribution is within the discretion of the district court. In Re

10

Marriage of Goodmundson (1982), 201 Mont. 535, 539, 655 P.2d 509, 511. We hold the District Court did not abuse its discretion in averaging the values given by the experts.

With regard to the various other valuations and distribution of assets that appellant asserts are incorrect, we need only state that there is substantial credible evidence to support the District Court's valuations of the marital estate's assets. We hold that the District Court did not err in distributing the marital estate.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

May 22, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Mark P. Yeshe
Attorney at Law
P.O. Box 413
Helena, MT 59624

Ann L. Smoyer
Smoyer Law Firm
1085 Helena Ave.
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy