No. 91-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

CINDY R. JOHNSTON,

       Petitioner, Counterrespondent,
       and Appellant,

  and

FAUSTO G. TURRIN,

       Respondent, Counterpetitioner,
       and Respondent.

APPEAL FROM:   District Court of the Ninth Judicial District,
              In and for the County of Pondera,
              The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Barbara E. Bell, Bell & Marra,
              Great Falls, Montana

       For Respondent:

              Kenneth R. Olson, Attorney at Law,
              Great Falls, Montana; Fausto G. Turrin,
              Attorney at Law, Great Falls, Montana

**FILED**

DEC 1 0 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  June 11, 1992

Decided:  December 10, 1992

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Cindy R. Johnston appeals from the Findings of Fact, Conclusions of Law and Order, and Decree of Dissolution of the Ninth Judicial District Court, Pondera County.

We affirm in part and remand.

Appellant raises five issues for this Court to consider:

1. Did the District Court err in its enforcement of the premarital agreement when dividing the marital estate?

2. Did the District Court err in the calculation of child support?

3. Did the District Court err in failing to implement its order for a psychological exam of respondent?

4. Did the District Court err in failing to appoint an attorney to represent the children?

5. Did the District Court err in awarding joint physical custody?

6. Did the District Court err in failing to award appellant attorney fees?

Respondent Fausto Turrin, a licensed attorney of this state, has provided this Court with 29 issues to consider. We conclude that with the exception of the constitutional issues raised by Fausto, the various issues raised in his brief are essentially the same as those raised by Cindy. Accordingly, we shall only address those issues raised in Cindy's brief and make references to Fausto's brief when appropriate. At the outset, we hold that Fausto has either failed to properly raise the constitutional

2

issues stated in his brief, the issues are now moot, or are without merit, and therefore, we will not discuss these issues.

The parties were married on May 5, 1985, in Great Falls. Two days before the wedding the parties entered into a premarital agreement. Two minor children were born into the marriage, Fausto John Turrin, III, age five, and Melissa Kay Turrin, age three. Cindy works as a computer programmer/supervisor for a CPA firm in Great Falls, and Fausto is a practicing attorney.

On August 8, 1989, Cindy filed a petition for dissolution. Fausto was represented by an attorney and acted as co-counsel, drafting many of his own documents and appearing alone in most of the hearings. On September 18, 1989, the court awarded Cindy temporary custody of the minor children with visitation to be worked out by the parties. On March 6, 1990, the parties stipulated to visitation of the children by Fausto but the agreement failed to work in practice. The court ordered mediation in an effort to avoid litigation, but that effort also met with failure. Following a bench trial, the court entered its findings of fact, conclusions of law, and decree on May 16, 1991. On May 30, 1991, Cindy filed a motion to amend the court's decree. On July 8, 1991, a hearing was held on the motion, which the court orally denied, with the exception of redetermining monthly child support and back child support payments. On July 26, 1991, Cindy filed her notice of appeal. On August 12, 1991, Fausto filed his notice of cross-appeal.

Unfortunately, like so many other domestic relations cases that come before this Court, this is rife with bitterness between the parties. The District Court file contains approximately 360 documents mainly comprised of motions and countermotions. Since the appeal, the parties have filed 18 motions with this Court. It is under these conditions that we render this opinion.

I.

Did the District Court err in its enforcement of the premarital agreement when dividing the marital estate?

The parties executed a premarital agreement on May 3, 1985, two days prior to their wedding. In its order, the District Court found that the premarital agreement was valid and enforceable. The court then proceeded to divide the marital estate according to the agreement. On appeal, Cindy does not challenge the validity of the agreement. Instead, she alleges that the District Court erred in failing to acknowledge that the terms of the agreement were not implemented because Fausto did not contribute to the parties' joint checking account which would be used to pay the bills, and therefore, a more equitable distribution of the marital estate is warranted.

The parties executed the premarital agreement prior to the 1987 Legislature's enactment of the Uniform Premarital Agreement Act. As a result, § 40-4-202(1), MCA (1985), requires the District Court to consider the validity of the premarital agreement, but it is not required to enforce it. The premarital agreement is but a factor, not the exclusive consideration, among many listed in

4

§ 40-4-202(1), MCA (1985), for the court to consider when distributing the property of the marital estate. In re the Marriage of Keepers (1984), 213 Mont. 291, 691 P.2d 810.

Our standard of review relating to the division of marital property was recently clarified as whether the district court's findings of fact are clearly erroneous. In re the Marriage of Danelson (Mont. 1992), 833 P.2d 215, 49 St. Rep. 597. In its findings of fact, and conclusions of law, the District Court found that the premarital agreement was valid and chose to enforce it. Cindy's share of the marital property amounted to $25,450 while Fausto's share amounted to $66,120 because he was given the home and the equity in the home.

The parties' home had a purchase price of $111,000. With the various repairs made, the current fair market value of the house was $119,000, which is supported by the record. Fausto contributed $32,000 toward the down payment from his separate funds. In addition, he paid off a second mortgage valued at $14,000 with his own funds, thereby creating an original equity in the home of $46,000. In addition, Fausto made mortgage payments totalling $12,537.

Cindy contends that she paid $23,681 in total monthly payments. Fausto states that she actually paid approximately $2000 more. In addition, she sold a boat for $5000, and her own home which had $7000 in equity. She also contended that she paid the day-to-day living expenses. However, the record reflects that she could not recall what she had done with her $12,000, or how much of

5

the day-to-day living expenses she paid. The court concluded that it was logical that a substantial amount of Cindy's money went toward house payments and family living expenses. Even so, it is unclear from the record who made the monthly payments and the source of the funds for the payments. The court found that the parties' home had an equity of $63,000. Considering that Fausto contributed $46,000 of his own money toward the home, the court awarded Fausto the equity in the home.

Cindy requests that she be reimbursed for the bookkeeping she performed for Fausto's law practice, as the terms of the premarital agreement stated that any money earned by either party should be kept separate. However, Fausto performed legal services for Cindy's rentals. The District Court refused to reimburse Cindy, concluding that the legal services provided by Fausto equalled Cindy's bookkeeping services. We hold that there was substantial evidence in the record to support the District Court's determination.

Cindy also objects to the court's valuation of the 1979 Datsun 280-ZX and the 1976 Ford pickup. She testified that the fair market value of the Datsun was only $1900, and the value of the Ford pickup was $1500. Fausto offered into evidence an independent fair market valuation by Taylor's Used Cars stating that the Datsun's fair market value was $2650, and the Ford's was $2850. This was the valuation the court used in dividing the property. We hold there was substantial evidence to support the District Court's valuation of the two vehicles.

Finally, Cindy requests that this Court modify the District Court's decree and order Fausto to return "baby books" to her and reimburse her for half of the living expenses paid for support of the family. We decline to do so. We hold that there is substantial evidence to support the District Court distribution of the marital property.

II.

Did the District Court err in the calculation of child support?

In reviewing child support, this Court has stated that a presumption exists in favor of the district court's determination, and this Court will reverse the district court only if it has abused its discretion. In re the Marriage of Sacry (Mont. 1992), 49 St. Rep. 452, 833 P.2d 1035.

A hearing was held on August 28, 1989, pertaining to temporary child custody. The court awarded Cindy temporary custody until a final determination was made. The court held a hearing on a motion to amend the final judgment on July 8, 1991. In the motion to amend, Cindy requested that the District Court grant back child support payments on the basis of sole custody and not split custody as provided in the decree. During that hearing, the court orally agreed to award back child support on the basis of sole custody. However, there is no written order issued by the District Court to reflect that decision. Cindy filed her notice of appeal on July 25, 1991. We conclude that the District Court properly should

7

have entered a written order awarding back child support covering the period of sole custody by Cindy.

Another issue raised by Cindy is at what point in the dissolution process do the modified SRS Child Support Guidelines come into effect. Apparently, from the time the parties submitted their proposed child support calculations to the issuance of the decree, the Guidelines were amended and the decree does not reflect these changes. Cindy offers no authority, but argues that the Guidelines came into effect on the date of the order. Therefore, the District Court should use the most recent Guidelines before issuing its order.

A district court is granted considerable discretion in calculating child support, and it may deviate from the Guidelines if it finds by clear and convincing evidence that the application of the standards and Guidelines is unjust to the child or any of the parties, or is inappropriate to a particular case. Section 40-4-204(3)(a), MCA. If a court decides to apply an older version of the Guidelines, then it must state its reasons for finding that the amended SRS guidelines are not applicable. Section 40-4-204(3)(b), MCA.

At the hearing on the motion to amend the final judgment on July 8, 1991, the court requested that Fausto supply the new proposed Guidelines so that it could amend child support. On July 12, 1991, Fausto then filed a motion for consideration of all of the Guidelines, alleging that Cindy was living with another man who contributed substantially to the support of the children.

Cindy denied this in her brief in opposition. The issue was never decided because Cindy filed an appeal on July 25, 1991, based on the court's May 16, 1991, decree. We remand for a redetermination of child support by the District Court in accordance with § 40-4-204(3), MCA, as most recently amended. Cindy has raised several other specific errors relating to the calculation of child support. Because of our holding above, she may bring these errors to the attention of the District Court.

## III.

Did the District Court err in failing to implement its order for a psychological exam of Fausto?

On January 30, 1991, Cindy moved for the District Court to order a psychological evaluation of Fausto, due to the deterioration of the visitation between him and the children. The court considered the matter at a March 18, 1991, hearing. Dr. George Hossack, a licensed psychologist and Cindy's counselor, recommended a psychological evaluation at the hearing. The court orally agreed with Dr. Hossack's recommendation but did not require psychological evaluations in its final order. On July 29, 1991, four days after the notice of appeal was filed by Cindy, the court issued an order requiring the parents and the children to obtain psychological evaluations. There was a motion to quash this order filed by Fausto's attorney, but the record ends at this point. Because we do not have a record before us to decide whether further psychological evaluations are required, we remand this issue to the District Court for further consideration.

9

## IV.

Did the District Court err in awarding joint custody?

Our standard of review in child custody matters is whether the district court abused its discretion. In re the Marriage of Reininghaus (1991), 250 Mont. 86, 817 P.2d 1159. When determining child custody, the district court must take into consideration the best interests of the children. Section 40-4-212, MCA. The court shall consider, but is not limited to, the factors set out in § 40-4-212(a)-(g), MCA. Here, the court awarded Cindy and Fausto joint physical custody. Fausto had physical custody of the children during the first six months of the year and Cindy had custody the last six months of the year. The court stated in its findings that both parties were in sufficient physical and emotional health to care for the children. In the transcripts, the court explained that it was awarding joint physical custody primarily because Cindy would be required to work long hours during the tax season. The court was very cognizant of the bitterness between the parties and reserved the right to have the children examined by a proper expert to see if the children were harmed by the custody provisions which, from viewing the record on appeal, the court is now attempting to do. Therefore, we hold that the District Court did not err in awarding joint physical custody.

## V.

Did the District Court err in failing to appoint an attorney to represent the children?

10

Section 40-4-205, MCA, allows the court to appoint an attorney to represent the interests of the children with respect to support, custody, and visitation. In a recent case, we held that § 40-4-205, MCA, was a permissive, not a mandatory statute. In re the Marriage of Merriman (1991), 247 Mont. 491, 807 P.2d 1351. The decision to appoint an attorney to represent children in custody matters is discretionary with the court. In re the Marriage of Hammill (1987), 225 Mont. 263, 732 P.2d 403. We hold that the District Court did not abuse its discretion in refusing to appoint an attorney to represent the children.

VI.

Did the District Court err in failing to award appellant attorney fees?

Both Fausto and Cindy claim that they are entitled to attorney fees. The premarital agreement granted attorney fees to the party successfully defending the agreement. Section 40-4-110, MCA, grants the District Court the discretion to award reasonable attorney fees. Absent an abuse of discretion, this Court will not overturn the District Court's decision denying attorney fees. In re the Marriage of Manus (1987), 225 Mont. 457, 733 P.2d 1275. The court found that the litigation of this matter was prolonged by both parties, however, more so by Fausto than by Cindy. The court concluded that the unnecessary attorney fees caused by each party offset each other and denied attorney fees to both parties. From our examination of the record, we concur with the court's conclusion.

11

In our order dated September 24, 1991, we denied Cindy's request to divide the cost of the transcript on appeal between the parties. We stated that responsibility for the costs of the transcript would be determined by this Court under Rule 33, M.R.Civ.P. Because Fausto has filed numerous requests to have additional transcripts filed with this Court, as well as numerous requests for extensions of time in filing his responsive brief, thereby creating significant delay in our ability to render a decision, we hereby order that costs of the transcript on appeal be equally divided between the parties.

Affirmed in part and remanded for further determination in accordance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

December 10, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Barbara E. Bell
Bell & Marra
Ste. 201 Liberty Center
9 Third St. No.
Great Falls, MT 59401

Kenneth Olson
Attorney at Law
600 Central Plaza
Great Falls, MT 59401

Fausto Turrin
600 Central Plaza
Great Falls, MT 59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy