No. 92-268

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

DOROTHY DAVIES STOUT,
formerly DOROTHY DAVIES GOLLEHON,

      Petitioner and Appellant,

  and

THOMAS F. GOLLEHON,

      Respondent and Respondent.

FILED

OCT 04 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Ninth Judicial District,
In and for the County of Teton,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        K. Dale Schwanke; Jardine, Stephenson, Blewett &
        Weaver, Great Falls, Montana

    For Respondent:

        Daniel Donovan, Attorney at Law, Great Falls,
        Montana

Submitted on Briefs:  June 23, 1993

Decided:  October 4, 1993

Filed:

_____
      Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Dorothy Gollehon appeals from the findings of fact, conclusions of law and decree of dissolution entered by the Ninth Judicial District Court, Teton County, distributing the marital estate and declining to award attorney's fees and costs. We affirm.

The following issues are raised on appeal:

1. Did the District Court err in distributing the marital property?

2. Did the District Court err by declining to award attorney's fees and costs?

Dorothy Stout (Dorothy) and Thomas Gollehon (Thomas) were married on December 30, 1987. At Dorothy's request, they signed a premarital agreement on that date expressing their desire to "keep separate and apart" their respective assets and obligations acquired either before or during the marriage.

Prior to the marriage, Dorothy resided on leased property referred to as the "Kreger Place" near Fairfield, Montana, where she raised Tarentaise cattle. Dorothy characterized the Kreger lease as a "sweetheart deal," asserting that she was charged only one-third the cost of leasing comparable property and was also able to sublease a portion of the property.

Dorothy moved her cattle onto Thomas' ranch, located eighteen miles from the Kreger Place, shortly after the marriage. She intended the cattle to remain there only for the winter and calving

2

season, after which she would return them to the Kreger Place. However, Thomas insisted that she terminate the lease. Dorothy claims that Thomas made the forfeiture of the lease a condition for remaining married; Thomas asserts that she had agreed prior to the marriage to terminate the lease. In any event, Dorothy relinquished the lease in early 1988.

Thomas informed Dorothy that he wanted a divorce in April of 1989. Two months later, Dorothy filed a petition to dissolve the marriage, asserting that it was irretrievably broken and requesting an equitable division of the marital assets and obligations.

Dorothy subsequently determined that continuing to raise cattle was not feasible given the loss of the Kreger lease and the additional expense that would be involved in re-establishing her ranching operation. As a result, Dorothy sold her cattle at an auction sale held in October of 1989. Dorothy and Thomas formally separated later that month.

The District Court held a dissolution hearing on March 22, 1990. On September 25, 1991, the parties stipulated to allow the court to order the marriage dissolved pending later entry of the decree of dissolution. The court entered an order dissolving the marriage on November 1, 1991 and filed its findings of fact, conclusions of law and dissolution decree on April 17, 1992. The court concluded that the parties were entitled to their individual assets and liabilities as of the termination of the marriage. The court also ordered that Dorothy and Thomas pay their own attorney's fees and costs. Dorothy appeals.

Did the District Court err in distributing the marital property?

The District Court found that Dorothy and Thomas had executed a premarital agreement at Dorothy's suggestion and concluded that the agreement was valid and enforceable. The court also made extensive findings concerning the factors set forth in § 40-4-202, MCA. Based on those findings, the court concluded that it was equitable for Dorothy and Thomas each to retain their own assets and liabilities as of the termination of the marriage.

We review a district court's findings of fact relating to the division of marital property to determine whether they are clearly erroneous. Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219. A district court, however, has no discretion in determining a question of law; thus, we review a court's conclusion of law to determine whether it is correct. Danelson, 833 P.2d at 219-20.

The bulk of Dorothy's asserted errors relate to the District Court's findings under § 40-4-202, MCA. She contends that a number of the findings were clearly erroneous because they were not supported by substantial evidence or reflect the court's misapprehension of the effect of the evidence. However, because the District Court's conclusion regarding the enforceability of the premarital agreement is dispositive if correct, we focus initially on that conclusion.

Dorothy challenges the enforcement of the premarital agreement on two grounds. First, she contends that she did not enter the agreement voluntarily because she did not know that Thomas would

4

insist on the relinquishment of the Kreger lease. Second, Dorothy asserts that she did not know Thomas' financial situation when the agreement was executed.

Thomas and Dorothy executed their premarital agreement on December 30, 1987. The Uniform Premarital Agreement Act (the Act), codified at §§ 40-2-601 through -610, MCA, applies to premarital agreements executed on or after October 1, 1987. 1987 Mont. Laws, Ch. 189, Sec. 17. Thus, the Act applies to the agreement before us.

Section 40-2-608, MCA, of the Act specifically governs the enforceability of premarital agreements. A premarital agreement may be set aside under subsection (1) of that statute if the party seeking to avoid the agreement proves that it was not executed voluntarily. The sole basis for Dorothy's claim regarding voluntary execution is her assertion that she did not know Thomas would insist on termination of the Kreger lease when she signed the agreement. Even if her assertion is true, Dorothy cites no authority to support her contention that a lack of knowledge concerning Thomas' future conduct renders her execution of the agreement involuntary. Furthermore, the record reflects that the premarital agreement was executed at her suggestion and drafted by her attorney. Thus, there is no merit to her contention that she did not enter into the agreement voluntarily.

Dorothy's assertion that she did not know the extent of Thomas' assets also provides no basis to preclude enforcement of the agreement under § 40-2-608, MCA. A party must prove that a

5

premarital agreement was unconscionable when executed and that there was no fair and reasonable disclosure of the other party's property and financial obligations before the agreement can be set aside under § 40-2-608(2), MCA. Dorothy has not contended that the premarital agreement was unconscionable at the time of execution. Indeed, such a position would be untenable considering that the agreement was executed at her suggestion and drafted by her attorney. Thus, her assertion that she did not know the extent of Thomas' property is not a sufficient basis to set aside the agreement under § 40-2-608(2), MCA. We conclude that the District Court correctly concluded that Dorothy and Thomas' premarital agreement was valid and enforceable.

We next turn to the terms of the agreement to ascertain the distribution of the marital property. The premarital agreement reflects Dorothy and Thomas' intent "to keep separate and apart" the assets and liabilities they individually acquired either prior to or after the marriage. The agreement expressly governs "any rights that either might or could have as to the other or the property owned by the other by reason of said marriage." Furthermore, the premarital agreement contains Dorothy and Thomas' mutual waiver of all rights and interests in the other's property that they might acquire as a consequence of the marriage. Thus, according to the terms of the premarital agreement, Dorothy was not entitled to any share of Thomas' assets upon the dissolution of the marriage.

Dorothy contends that, even if the premarital agreement

precludes her from obtaining an interest in Thomas' assets that might have arisen as a consequence of their marriage, it should not be construed to prevent her from obtaining damages resulting from the termination of the Kreger lease. Relying on 66 Am. Jur. 2d Release § 14 (1973), she asserts that a person cannot release another from liability arising out of the other's future acts.

The obvious flaw in Dorothy's position is that the termination of the Kreger lease is not relevant to the distribution of property upon dissolution of the marriage. As discussed above, the distribution of the marital property is governed by the premarital agreement in which Dorothy waived all her rights and interest to Thomas' individually-owned assets acquired either before or during the marriage. Any appropriate action Dorothy may have for damages resulting from Thomas' insistence that she relinquish the lease is separate and apart from the dissolution proceeding and the distribution of the marital estate therein.

Finally, we turn to Dorothy's alleged errors concerning the District Court's findings under § 40-4-202, MCA. She asserts that the findings did not take into account the financial detriment, including additional expenses and loss of future income, that she incurred as a result of Thomas' insistence that she terminate the Kreger lease. On that basis, she contends that an equitable distribution of the marital property requires that she be awarded, at a minimum, $36,837 from Thomas' assets.

Prior to enactment of the Act, a premarital agreement was but one factor a district court was required to consider when

7

distributing marital property under § 40-4-202, MCA (1985). In re the Marriage of Johnston/Turrin (1992), 255 Mont. 421, 425, 843 P.2d 760, 762. However, the legislature added subsection (5) to § 40-4-202, MCA, when it passed the Act; that subsection requires premarital agreements to be enforced as provided by the Act. Thus, where a premarital agreement is enforceable under the Act, the property distribution is governed by the agreement and not the factors set forth in § 40-4-202, MCA. Therefore, we do not address Dorothy's asserted errors relating to the court's findings regarding those factors.

While the District Court erred in applying the § 40-4-202, MCA, factors rather than relying solely on the valid and enforceable premarital agreement, its distribution of the marital property was in accord with that premarital agreement. We hold that the District Court did not err in distributing the marital property.

Did the District Court err by declining to award attorney's fees and costs?

Section 40-4-110, MCA, allows the district court to award attorney's fees and costs to either party in a dissolution action after considering the parties' respective financial resources. The district court has considerable discretion in making such an award. In re the Marriage of Peetz (1992), 252 Mont. 448, 453, 830 P.2d 543, 549. We will not overturn a court's denial of attorney's fees absent an abuse of discretion. In re the Marriage of Wackler (Mont. 1993), 850 P.2d 963, 966, 50 St.Rep. 406, 408.

8

Dorothy asserts that the District Court's only finding concerning this issue was that she did not include a specific request in her pleadings. She also contends that her requests for "such other and further relief" in her petition and for attorney's fees in her proposed findings of fact, conclusions of law and decree were a sufficient basis for the court to award attorney's fees and costs. Finally, relying on In re the Marriage of Johnsrud (1978), 175 Mont. 117, 572 P.2d 902, Dorothy contends that the District Court has jurisdiction to make such an award even absent a specific request.

Dorothy's assertion that the District Court limited its findings on attorney's fees to her failure to make a request is not supported by the record. In addition to that finding, the court found that she had not demonstrated an inability to pay her own attorney's fees and costs. According to the court's findings, Dorothy had sufficient income and assets from which to pay her own attorney's fees, including the proceeds of her cattle sale, "loans" or gifts from her father, jewelry and other personal property. The court also found that she had not established the amount and reasonableness of her attorney's fees and costs.

We conclude that the District Court did not err or abuse its discretion in declining to award attorney's fees and costs to Dorothy.

Affirmed.

_____
Justice

9

We concur:

John Conway Harrison

Justices