NO. 94-126

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

NANCY KAY JAKKOLA,

    Petitioner and Respondent,

  and

WESLEY VERNON JAKKOLA,

    Respondent and Appellant.

FILED

NOV 14 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Carbon,
                The Honorable Robert W. Holmstrom, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        J. Reuss, Wright, Tolliver & Guthals, P.C.,
        Billings, Montana

    For Respondent:

        Kent E. Young, Red Lodge, Montana


                    Submitted on Briefs:  October 13, 1994

                            Decided:  November 14, 1994

Filed:

                    Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Wesley Vernon Jakkola appeals from a decision of the Thirteenth Judicial District Court, Carbon County, ordering him to pay his wife $6,000 pursuant to an in-court stipulation. We affirm.

The sole issue is whether the District Court erred in enforcing the stipulation made between the parties.

Nancy and Wesley Jakkola were married in Idaho on April 30, 1966. In 1973 the couple returned to Wesley's parents' ranch near Roberts, Montana, and began working on the ranch. Nancy and Wesley purchased the ranch from his parents a few years later. The couple lived and worked on the ranch until early in 1992, when they separated due to marital problems. Nancy filed for divorce in May 1992.

While the couple was separated, but before the final decree of dissolution, Wesley borrowed $18,144 from various family members to pay the ranch's day-to-day operating expenses as well as his personal expenses. This debt was to be paid out of marital assets. Approximately $7,000 was used for ranch expenses and $11,000 for personal expenses. During this same period Nancy sold marital assets worth over $6,000 to pay her personal expenses. Wesley incurred a marital debt of approximately $11,000 for his personal expenses while Nancy liquidated approximately $6,000 in marital assets for her personal expenses during the pendency of the divorce. The net result was that Wesley spent $5,000 more of their marital assets than Nancy during the same time period. The parties

later agreed to the figure being $6,000 in return for Nancy not contesting some of the alleged **"ranch"** expenses claimed by Wesley including gas, electricity, and the use of ranch vehicles for personal reasons.

The parties stipulated that $6,000 would be added to Nancy's share of the marital estate as compensation for the excess amount Wesley spent on personal expenses during the separation. The District Court carefully explored the ramifications of this stipulation with both parties, explaining that Nancy would receive $6,000 in addition to whatever it determined was her equitable share of the marital estate.

The District Court issued its findings of fact and conclusions of law, determining that an equitable division would be accomplished by dividing the value of the marital estate equally. Wesley received the ranch, but was required to pay Nancy an amount that would result in an equal distribution of the value of the marital estate. After the estate was divided equally, Wesley was ordered to pay Nancy the stipulated $6,000 to compensate her for the excess amount he spent during the separation.

Wesley moved the court to amend its findings of fact and conclusions of law. Wesley claimed he should be required to pay Nancy only $3,000 in addition to the property settlement. The District Court denied this portion of Wesley's motion and he appeals.

3

Did the District Court err in enforcing the stipulation between the parties?

We will not disturb a district court's property distribution unless the division of assets is clearly erroneous. In He the Marriage of Sacry (1992), 253 Mont. 378, 384, 833 P.2d 1035, 1039. A district court's findings are not clearly erroneous unless they are not supported by substantial evidence, the court misapprehended the evidence, or a review of the record leaves this Court with the definite and firm conviction that a mistake was committed. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

Wesley claims that he should only be required to pay Nancy $3,000. By paying her $3,000 after the property settlement, his share of the marital estate would be decreased by $3,000 and her share would be increased $3,000. This would result in her share of the marital estate being $6,000 more than his, thus satisfying the terms of the stipulation. Wesley claims that this is the correct interpretation of the stipulation because the $6,000 in question was a marital asset, therefore, he was entitled to $3,000 of it. He claims the District Court's ruling in essence made Nancy's share of the marital estate $12,000 greater than his. By paying her $6,000 after the estate had been divided equally, his share was decreased by $6,000 while her share was increased by $6,000. Wesley claims this was not the intent of the parties when they entered into the stipulation.

4

Wesley insists that the District Court incorrectly interpreted the stipulation between the parties. Wesley claims that if a husband spends marital assets during a separation pending a divorce, he should be required to pay his wife one-half that amount after the divorce. Such arrangements are not uncommon.

In In Re the Marriage of Rogers (1987), 226 Mont. 163, 734 P.2d 677, the husband liquidated approximately $9,000 of marital assets while he and his wife were separated. This court stated:

> [T]he husband objects to being ordered to pay the wife $4,500 as her share of assets he liquidated during their separation. The record shows that he sold a motor home for $6,000 and closed out a $3,300 IDS account. He contends these funds were necessary to cover the expenses of himself and the three children, who were all residing with him at that time.
>
> . . .
>
> There is no question that the IDS account and the mobile home were marital property. We conclude that the District Court was within its discretion in directing that the wife receive $4,500 as her share of the marital assets sold.

Rogers, 734 P.2d at 679. We held that the district court in Rogers did not err in ordering the husband to pay one-half the amount he had liquidated during the separation.

However, Wesley did not stipulate to such an arrangement. Wesley agreed to pay Nancy $6,000 in addition to her equitable share of the marital estate. Parties are bound by stipulations made in open court. In Re the Marriage of McLean/Fleury (1993), 257 Mont. 55, 60, 849 P.2d 1012, 1015. This Court likewise held that the district court in which the stipulation was entered should

5

also follow the stipulation. We recently stated: "[T]o the extent that the court is able to apply the statutory [§ 40-4-202, MCA] criteria while, at the same time, holding the parties to their on-record stipulations and agreements, it should do so." In Re the Marriage of Simms (1994), 264 Mont. 317, 326, 871 P.2d 899, 904. The District Court record clearly indicates that Nancy's share of the marital estate was to be increased by $6,000. To clarify the exact terms of the stipulation, the District Court made the following statements:

> THE COURT: In other words, what you are proposing, Mr. Reuss, is that Mrs. Jakkola be given $5,000 [later changed to $6,000] credit--in other words, <u>if I were to determine that her share of the ranch share should be $100,000, I should add $5,000 to it to equalize the moneys</u> that he used for his own purpose?
>
> . . .
>
> So the Court understands that, the Court, as a result of that stipulation, is authorized to give to Mrs. Jakkola $6,000 credit for--on any property--any amount of property that is set over to her; is that correct?
>
> . . .
>
> [O]r in other words just to put it just the reverse, that <u>[Mr. Jakkola] will be charged $6,000 as against his marital share.</u> [Emphasis added.]

Both parties agreed to the stipulation. By agreeing to the stipulation, Nancy gave up her right to contest how much of the $18,144 loan was actually used for ranch expenses and how much was used for Wesley's personal expenses. She relinquished this right relying on the stipulation. The stipulation in this case does not lend itself to varying interpretations. The terms of the stipula-

6

tion are clear.   Nancy was to receive $6,000 from Wesley in addition to any property settlement.

We conclude that the District Court did not err in ordering Wesley to pay Nancy $6,000 after the division of the marital estate.   We therefore affirm the decision of the District Court.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices