No. 96-721

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 238N

IN RE THE MARRIAGE OF

DIANE M. MILLER ARNDORFER,

Petitioner and Appellant,

and

BRAD L. ARNDORFER,

Respondent and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David Duke, Attorney at Law, Billings, Montana

For Respondent:

Brad L. Arndorfer, Attorney at Law, appearing *Pro Se*, Billings, Montana

No

Submitted on Briefs: August 6, 1998

Decided: September 29, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ **Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

¶ **Diane M. Miller Arndorfer (Diane) appeals the marital dissolution decision of the Thirteenth Judicial District Court of Yellowstone County, in which the court equitably divided the marital property and debts of her and her former husband, Brad L. Arndorfer (Brad), and determined custody of their minor child. We affirm.**

Issues

¶ Diane presents numerous questions on appeal. For purposes of convenience, we distill the discussion to three issues:

¶ (1.) Did the District Court abuse its discretion in the valuation of marital assets and debts?

¶ (2.) Should the District Court judge have recused himself from the trial due to alleged bias against Diane's Jewish heritage?

¶ (3.) Did the District Court err by refusing to award attorney's fees to Diane?

Factual and Procedural History

¶ Brad and Diane were married in Illinois in 1979. Diane gave birth to the couple's only child in 1983. During the first fifteen years of marriage, Brad and Diane accumulated certain property, including a house, a condominium, and a commercial building. By late in the summer of 1994, Brad and Diane decided to separate. Although they were initially able to cooperate regarding the sharing of custody and parental responsibilities, this cooperation gradually devolved into "a pitched battle royal."

¶ By fall of 1994, the situation between the couple had grown so irreconcilable that Diane filed for marital dissolution. In 1995, the District Court entered an order pursuant to stipulation of the parties requiring Brad and Diane to restrain from transferring, encumbering, concealing, or otherwise disposing of personal or marital property pending a decision by the court. The case went to trial in 1996. The trial focused on the issues of custody and the equitable division of marital property.

¶ The District Court found that total marital assets were valued at $399,924 and total marital liabilities were valued at $142,370, for a net worth of $257,554 in marital property. Included in the court's calculation of assets was a condominium (the Condo) located in Big Sky that Diane had brought into the marriage. Because the equity in the Condo was minimal at the outset of the marriage, the court found that the Condo should appropriately be treated as a marital asset because Brad, through his earnings, had contributed substantially to its "maintenance . . . throughout the

marriage." Other major marital assets included the family home, all the corporate stock in Bad Osprey, Inc. (the Corp), and a building owned by the Corp that generated $967 in monthly rental income.

¶ At trial, the couple disputed the value of Brad's law office accounts receivable. Although computer-generated billing records indicated that the aggregate value of these accounts receivable was $45,000, the court found Brad credible in testifying that many of the accounts were not collectible and thus adopted his $5,000 valuation.

¶ Major marital liabilities included the mortgages on the family home and the Condo, $35,000 in liability for back State and Federal income taxes, and a $10,000 loan debt that the parties agreed was owed to Diane's mother. However, Diane's allegation of an additional $19,000 obligation to her mother was disputed by Brad. The court found that there was insufficient evidence of this alleged debt to properly consider it a marital liability.

¶ During trial, Brad agreed that the child should continue to live in the family home and thus that the home should be awarded to whichever party was granted primary residential custody. Diane requested that the court award her a greater share of the marital property in lieu of maintenance. The District Court ordered the marriage of Brad and Diane dissolved and granted joint custody to the parties, designating Diane as primary residential custodian. In dividing the marital property, the court awarded Diane the family home, the ownership interest in the Corp, household possessions, and other personal property; it awarded Brad the Condo, the assets for his law practice, and certain personal property.

¶ When Brad and Diane's respective debts were taken into account, this distribution effectively awarded Diane property with a net value of approximately $250,000, while only giving Brad property with a net value of approximately $8,500. To compensate for this disparity, the court ordered that Diane make a $75,000 cash payment to Brad in order to avoid "an unequal distribution" of marital property. The court reasoned that Diane's claimed experience in real estate transactions, together with the real estate awarded to her, afforded her the ability to pay the $75,000 to Brad. The court also declined to award Diane attorney's fees, finding that the distribution of marital assets provided her with sufficient capacity to pay the fees.

¶ Shortly after trial but prior to the court's entry of final judgment, Diane's counsel

wrote a letter to the District Court judge with an attached motion for recusal and a new trial. This letter alleged that the judge lacked the necessary constitutional impartiality because he inappropriately referred to Diane as a "Jewish mother" at the close of the trial, and subsequently made two unsolicited off-the-record comments again referring to her as a "Jewish mother." She requested that the judge recuse himself from the case or else the motion would be filed. When the judge apparently indicated that he would grant Diane primary residential custody, she chose not to file the motion. However, Brad did file a similar motion for recusal, attaching Diane's letter to the motion "to make this threat to the Court public record and give the Judge an opportunity to bow out if he wished." Although it is unclear from the record, it appears that the District Court judge did not act on this motion. It is apparent that he did not recuse himself from the case.

¶ After entry of final judgment, Brad filed a motion to amend the District Court judgment. At the hearing on this motion, evidence was introduced showing that Diane refinanced the loan on the Condo in violation of court order, increasing the principal amount of the loan from $21,370 to $35,000. Brad thus requested that the court change the property division to compensate for the additional debt that he had acquired by Diane's actions. Diane in turn made a cross-motion to amend the valuation of the Condo from $40,000 to $58,500, based on a new appraisal, and therefore requested that the court allocate an additional $13,449 in debt to Brad. The District Court rejected most of these contentions, but did increase the cash amount owed Brad by Diane from $75,000 to $88,730 to compensate for her actions in violation of court order.

Discussion

¶ (1.) Did the District Court abuse its discretion in the valuation of marital assets and debts?

¶ Diane asserts that the District Court abused its discretion in the valuation of marital assets and debts. We disagree. It is axiomatic that we " 'pay a great amount of deference to the judgment of the District Court regarding property divisions.' " In re Marriage of Garner (1989), 239 Mont. 485, 488, 781 P.2d 1125, 1127, *quoting* Burleigh v. Burleigh (1982), 200 Mont. 1, 8, 650 P.2d 753, 756. A district court's findings of fact regarding division of marital property are reviewed to determine if the findings upon which its division was based are clearly erroneous. In re Marriage

of Meeks (1996), 276 Mont. 237, 242, 915 P.2d 831, 834 (citing In re Marriage of DeWitt (1995), 273 Mont. 513, 519, 905 P.2d 1084, 1087); *see also* Rule 52(a), M.R. Civ.P. ("[f]indings of fact . . . shall not be set aside unless clearly erroneous . . . "). Provided that a district court's judgment is supported by substantial credible evidence, we will not intervene absent an abuse of discretion. In re Marriage of Griffin (1996), 275 Mont. 37, 43, 909 P.2d 707, 710-11 (citing In re Marriage of Maedje (1994), 263 Mont. 262, 266, 868 P.2d 580, 583).

¶ In a marriage dissolution proceeding, the test for abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." In re Marriage of Rolfe (1985), 216 Mont. 39, 45, 699 P.2d 79, 83 (citing In re Marriage of Vert (1984), 210 Mont. 24, 26, 680 P.2d 587, 588). Applying this standard, we conclude that the District Court did not abuse its discretion. A district court may adopt any reasonable valuation of marital property supported by the record, and its valuation may be based upon " 'expert testimony, lay testimony, documentary evidence, or any other combination thereof.' " *Marriage of Meeks*, 276 Mont. at 242-43, 915 P.2d at 835, *quoting* In re Marriage of Robinson (1994), 269 Mont. 293, 296, 888 P.2d 895, 897. Here, the District Court employed conscientious judgment in valuing the property apportioned to each spouse, based its valuation upon credible evidence in the record, and did not exceed the bounds of reason or otherwise cause Diane to suffer substantial injustice.

¶ Diane claims that the District Court abused its discretion because it failed to offer an explanation for its selection of Brad's valuation of the Condo and his law office accounts receivable over her's. Diane correctly states the rule, but misapplies it to the facts of this case. Where conflicting valuation evidence is presented, the trial court abuses its discretion if it fails to provide an explanation or indicate the basis for its determination of value. *Marriage of Rolfe*, 216 Mont. at 46, 699 P.2d at 83 (citing Larson v. Larson (1982), 200 Mont. 134, 649 P.2d 1351). However, the record indicates that Brad and Diane initially stipulated to the value of the Condo as $40,000. Furthermore, a district court may enforce a written, in-court stipulation: " '[T]o the extent that the court is able to apply the statutory [§ 40-4-202, MCA, division of marital property] criteria while, at the same time, holding the parties to their on-record stipulations and agreements, it should do so.' " In re Marriage of Jakkola (1994), 267 Mont. 450, 453, 884 P.2d 783, 785, *quoting* In re Marriage of Simms (1994), 264 Mont. 317, 326, 871 P.2d 899, 904. We need nothing more to hold

that the District Court did not abuse its discretion in valuing the Condo at $40,000 and in refusing to allow Diane to subsequently deviate from the stipulated value.

¶ The District Court heard testimony from both parties and questioned both Brad and Diane about the value of the law office accounts receivable. In its judgment, the court stated that "the evidence offered by [Brad] on these matters is more believable as to their value . . . ." Therefore, the court chose to "adopt[] the Husband's valuation of these items." The court's valuation of the law office accounts receivable essentially came down to the credibility of the testimony presented. It is settled that we will not substitute our judgment for that of the trial court regarding the credibility of witnesses or the weight to be given their testimony. *Marriage of Meeks*, 276 Mont. at 247, 915 P.2d at 837-38 (citing In re Seizure of $23,691 in U.S. Currency (1995), 273 Mont. 474, 485, 905 P.2d 148, 155); *see also* Rule 52(a), M.R.Civ.P. ("due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses"). We conclude that the District Court did not abuse its discretion in the valuation of the law office accounts receivable.

¶ (2.) Should the District Court judge have recused himself from the trial due to alleged bias against Diane's Jewish heritage?

¶ At the close of trial, the District Court judge made the following remarks:

> I've heard the expression of a Jewish mother, and I've never really known what it meant, but if that expression means that the offspring of a Jewish mother cannot ever be ill, and that he is always right, and [that there is] always someone [who] is picking on him, well, some of that has certainly come through in this case.

On two occasions subsequent to trial, the judge allegedly again used the phrase "Jewish mother" to refer to Diane while speaking with her attorney in the judge's chambers.

¶ Diane contends that she did not receive a fair and unbiased trial in the District Court. She therefore requests relief from this Court. It is true that " '[a] judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.' " Lutz v. National Crane Corp. (1994), 267 Mont. 368, 385, 884 P.2d 455, 465,

*quoting* Canon 2(a), Code of Judicial Conduct. The judge's use of this stereotypical phrase reveals an arbiter who lost his patience with a difficult litigant. While we do not condone the use of such characterizations, we need not reach the issue of judicial bias.

¶ By failing to file her motion for recusal with the District Court, Diane failed to preserve the issue of bias for appeal. The record indicates that no objection was made by Diane's attorney when the judge made the comment at trial, nor did Diane file a motion for recusal with the District Court. Accordingly, she failed to preserve the issue of judicial bias for appeal. Phil-Co Feeds, Inc. v. First Nat. Bank in Havre (1989), 238 Mont. 414, 424, 777 P.2d 1306, 1313 (citing Evangeline v. Billings Cycle Center (1981), 192 Mont. 106, 626 P.2d 841). We have stated on numerous occasions that we will review only those questions raised in the trial court; a party may not raise an issue for the first time on appeal. Morse v. Cremer (1982), 200 Mont. 71, 81, 647 P.2d 358, 364; In re Marriage of Schnell (1995), 273 Mont. 466, 472, 905 P.2d 144, 148. Furthermore, we will not invoke the "plain error" exception in cases, like this one, where the "failure or refusal to raise an issue in trial court is conscious and intentional on the part of trial counsel." Martinez v. Montana Power Co. (1989), 239 Mont. 281, 285-86, 779 P.2d 917, 920 (citing Halldorson v. Halldorson (1977), 175 Mont. 170, 174, 573 P.2d 169, 172). We hold that the issue of judicial bias was not preserved for appeal.

¶ (3.) Did the District Court err by refusing to award attorney's fees to Diane?

¶ Diane asserts that the trial court's denial of attorney's fees was an abuse of discretion. We disagree. Section 40-4-110, MCA, allows a district court, after considering the respective financial resources of each party, to order that the opposing party pay the costs and attorney's fees of the party with limited financial ability. Section 40-4-110, MCA. However, we have previously held in a marital dissolution case that a district court must simply " 'indicate its reasons for refusing to grant attorney[']s fees.' " In re Marriage of Voelkel (1987), 226 Mont. 143, 147, 734 P.2d 217, 220, *quoting* In re Marriage of Rolfe (1985), 216 Mont. 39, 49, 699 P.2d 79, 84. Here, the District Court found that "the distribution of the [marital] assets . . . afforded to the Wife assets with which she is capable of paying her attorney fees." This is a clear indication of the court's reasoning. We hold that the District Court did not err in denying attorney's fees.

¶ **In conclusion, we hold that the District Court neither erred in its valuation of marital assets and debts nor in its refusal to grant Diane attorney's fees. We do not reach the issue of judicial bias because Diane failed to preserve it for appeal.**

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER